Barbara MITCHELL and Gregory Mitchell, Plaintiffs–Appellants,

v.

COLLAGEN CORPORATION, Defendant–Appellee.

No. 94–3946.

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1995.

Decided Oct. 2, 1995.

Rehearing Denied Nov. 22, 1995.

David Cerven, Joseph E. Costanza, Sr., Burke, Murphy, Costanza & Cuppy, East Chicago, IN, Michael M. Essmyer (argued), Essmyer & Tritico, Houston, TX, Clinard Hanby, The Woodlands, TX, for Barbara and Gregory Mitchell.

Gregory J. Tonner, Jon F. Schmoll, Spangler, Jennings & Dougherty, Merrillville, IN, Keith A. Jones, Joe W. Redden, Jr. (argued), Beck, Redden & Secrest, Houston, TX, for Collagen Corporation.

Robert Neil Weiner, Steve J. Boom, Arnold & Porter, Washington, DC, Hugh Young, Product Liability Advisory Council, Incorporated, Reston, VA, for amicus curiae Product Liability Advisory Council, Incorporated.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

In this case, Barbara and Gregory Mitchell appeal the district court's decision denying them leave to amend their complaint and

dismissing their state law claims on the ground that they were all preempted by the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360c–3601. For the reasons that follow, although we conclude that some state law claims are not preempted by the MDA, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

In 1988, Barbara Mitchell received several injections of Zyderm or Zyplast (collectively, "Zyderm"), collagen-based products produced by Collagen Corporation. These products are used to correct skin tissue anomalies such as wrinkles. Under the Medical Device Amendments, 21 U.S.C. § 360c–3601 (MDA), to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–395, Zyderm is classified as a "Class III medical device." Class III devices must be approved by the FDA before they may be sold to the public. 21 U.S.C. § 360c(a)(1)(C).

The premarket approval ("PMA") process is used to determine "the safety and effectiveness" of a device with respect to its intended users under the conditions "prescribed, recommended, or suggested" in its labeling. 21 U.S.C. § 360c(a)(2). As part of the PMA process, a manufacturer must submit samples of the device, an outline of the device's components and properties, a description of the manufacturing process, safety data, a bibliography of all reports concerning the device's safety and effectiveness, copies of all proposed labeling, and any other information the FDA requests. 21 U.S.C. § 360e(c); *see also* 21 C.F.R. § 814.20. The application is referred to a panel of qualified experts for study and submission of a report and recommendation respecting approval. 21 U.S.C. § 360e(c)(2); *see id.* § 360c(b)(2) (describing composition of panels). The FDA retains the right to withdraw its approval if it finds that a device previously approved is not safe and effective. 21 U.S.C. § 360e(e).

Zyderm's PMA initially was approved in 1981. The FDA approved the PMA for Zy-plast, a derivative of Zyderm, in 1985. During 1991–1992, the FDA conducted a re-review of Zyderm and concluded in early 1992 that its PMA approval decision was appropriate.

### B. *Earlier Proceedings*

Following her injections, Barbara Mitchell developed serious medical complications. In 1993, she and her husband filed suit against Collagen in Indiana state court. Their complaint included counts sounding in strict liability, negligence, fraud, mislabeling, misbranding, adulteration, and breach of warranty. Collagen removed the case to federal court. The Mitchells moved to amend their complaint to add a claim under Indiana's Deceptive Consumer Sales Act; Collagen filed for summary judgment on the ground that the Mitchells' claims were preempted by federal law.

The district court denied the Mitchells' motion for leave to amend. 870 F.Supp. 885, 887–89 (N.D.Ind.1994). The court reasoned that amendment would be futile because the Mitchells' claim would be time-barred under the applicable limitations period. The district court further held that the Mitchells' claim was not saved by their allegation that Collagen had concealed fraudulently their claims. The court reasoned that, even if the Mitchells could rely upon a claim of fraudulent concealment to toll the applicable limitations period, such tolling would occur for only a "reasonable time." The court found the Mitchells' delay in filing suit unreasonable. It noted that the Mitchells knew that Zyderm was related to Barbara Mitchell's injuries since at least 1991 and that they had delayed thirteen months between the time they acquired this information and the time they first filed suit against Collagen, and an additional twelve months before they sought to add the Deceptive Consumer Sales Act claim.

Next, the court determined that the Mitchells' remaining state law claims were preempted. 870 F.Supp. at 889–98. The court focused upon the MDA's preemption provision, which expressly proscribes states from establishing "any requirement ... dif-

ferent from, or in addition to," the requirements established pursuant to the MDA. *See* 21 U.S.C. § 360k(a).[1] Regulations promulgated by the FDA explain that the state "requirements" preempted under section 360k(a) include those "established by statute, ordinance, regulation or court decision." 21 C.F.R. § 808.1(b). Relying upon the statutory preemption provision, the court reasoned that Congress intended the MDA amendments to have a broad preemptive effect—one that encompassed common law causes of action. It further reasoned that, in the case of Class III devices, the detailed premarket approval procedures constituted applicable federal requirements that preempted all state laws that established standards "different from, or in addition to," the federal mandates. To the extent that the FDA's regulations, such as 21 C.F.R. § 808.1(d),[2] suggested that the MDA amendments preempted only those state laws directed specifically at medical devices, the district court continued, they were inconsistent with congressional intent and entitled to no deference.

## II

## DISCUSSION

 There are two basic issues on appeal. First, we must determine whether the district court erred in denying the Mitchells leave to amend their complaint. We review the district court's decision for abuse of discretion. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir.1994). Second, we must consider whether the district court properly granted Collagen summary judgment on the ground that the Mitchells' remaining state law claims were preempted. We review the district court's grant of summary judgment de novo. *Green v. Shalala*, 51 F.3d 96, 99 (7th Cir.1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.; see generally Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443–44 (7th Cir.1994).

### A. Denial of Leave to Amend

 The Mitchells submit that the district court abused its discretion in denying their motion for leave to amend their complaint. Federal Rule of Civil Procedure 15(a) directs the district courts freely to allow leave to amend a complaint "when justice so requires." Fed.R.Civ.P. 15(a). However, district courts need not entertain futile amendments to the pleadings. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir.1993); *DeSalle v. Wright*, 969 F.2d 273, 278 (7th Cir.

---

1. The statute provides:

 Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
 (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
 (2) which relates to the safety or effectiveness of the device or to any other matter in a requirement applicable to the device under this chapter.
 21 U.S.C. § 360k(a).

2. The regulation provides, in pertinent part:

 State or local requirements are preempted only when the [FDA] has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific [FDA] requirements. There are other State or local requirements that affect devices that are not preempted by [21 U.S.C. § 360k(a)] because they are not 'requirements applicable to a device' within the meaning of section [360k(a)]. The following are examples of State and local requirements that are not regarded as preempted by section [360k(a)] of the act:
 (1) Section [360k(a)] does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.

 \* \* \* \* \* \*

 (6)(ii) Generally, section [360k(a)] does not preempt a State or local requirement prohibiting the manufacture of adulterated or misbranded devices. Where, however, such a prohibition has the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement, then the prohibition will be preempted if it is different from, or in addition to, a Federal requirement established under the act.
 21 C.F.R. § 808.1(d).

1992). Thus, the district court does not abuse its discretion in denying leave to amend when the proposed amendment could not withstand a motion to dismiss. *See Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir. 1992) ("An amendment is futile when it ... could not withstand a motion to dismiss."); *see also Moore,* 999 F.2d at 1128.

■ In this case, the Mitchells sought leave to add a claim against Collagen under the Indiana Deceptive Consumer Sales Act. Such claims are subject to a two-year occurrence limitations period. *See* Ind.Code § 24-5-0.5-5(b) ("Any action brought under this chapter may not be brought more than two (2) years after the occurrence of the deceptive act[.]"). Collagen notes that, in this case, the two-year period began to run no later than September 1988, when Barbara Mitchell received her final injection. Therefore, Collagen contends, the limitations period expired well before the Mitchells filed suit in 1993. The Mitchells respond, however, that Collagen should be estopped from raising the limitations period as a defense because Collagen fraudulently concealed their cause of action from them. Collagen replies that the Mitchells should not receive any equitable extension of the limitations period because their delay in seeking leave to amend was unreasonable.

■ Under Indiana law, when grounds such as fraudulent concealment exist for estopping a defendant from raising the expiration of the statute of limitations as a defense, a limitations period may be extended in equity to allow a plaintiff a reasonable time within which to file suit. *See, e.g., Babcock v. Lafayette Home Hosp.,* 587 N.E.2d 1320, 1324 (Ind.Ct.App.1992). This equitable extension, however, does not resurrect the full limitations period for the plaintiff. Rather, it affords the plaintiff merely a "reasonable period" in which to file suit. *Id.; Yarnell v. Hurley,* 572 N.E.2d 1312, 1315 (Ind.Ct.App. 1991); *see also Cacdac v. Hiland,* 561 N.E.2d 758, 759 (Ind.1990).

Applying these principles, we cannot say that the district court abused its discretion by denying the Mitchells leave to amend. The Mitchells rely on Collagen's alleged fraudulent concealment as the basis for seeking an extension of the applicable limitations period. However, the Mitchells' own complaint makes clear that they knew Collagen might be the source of their injuries by late 1991. *See* Complaint, R.1, Ex.A at 3, Count I, ¶10 ("Plaintiffs Barbara and Gregory Mitchell learned that there was a relationship between Defendant Collagen Corporation's products and her injuries in the fall of 1991."). The Mitchells do not explain why they waited twenty-five months after first acquiring this knowledge, or, more particularly, over twelve months after first filing suit against Collagen, to seek leave to add their claim under the Indiana Deceptive Consumer Sales Act. Consequently, the district court did not abuse its discretion in denying leave to amend. The Mitchells' unexplained delay was not reasonable, and, therefore, there would have been no basis for extending the expired limitations period to save their time-barred claim. *Cf. Babcock,* 587 N.E.2d at 1324-25 (finding unreasonable plaintiff's unexplained failure to file suit until over one year after learning defendant had injured her).

### B. *Preemption*

#### 1.

We begin with a review of the principles that govern preemption analyses. Under the Supremacy Clause, "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to this authority, the Congress may preempt state law. *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). "Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent." *Hawaiian Airlines, Inc. v. Norris,* — U.S. —, —, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994); *see Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 2036-37, 119 L.Ed.2d 157 (1992); *see also CSX Transp., Inc. v. Easterwood,* — U.S. —, —, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (stating that preemption "will not lie unless it is 'the clear and manifest purpose of Congress'") (quot-

ing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

■ As the Supreme Court noted in *Easterwood*, evidence of preemptive purpose "is sought in the text and structure of the statute at issue." —— U.S. at ——, 113 S.Ct. at 1737. "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.* Indeed, the existence of an express preemption clause supports an inference that Congress intended to limit the federal statute's preemptive scope to the express terms of the clause, although it "does not mean that the express clause entirely forecloses any possibility of implied preemption." *Freightliner Corp. v. Myrick*, —— U.S. ——, ——, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995) (discussing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). "Pre-emption ... is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quotations and citation omitted).

### 2.

We now apply these principles to the MDA. The MDA contains an express pre-emption provision, 21 U.S.C. § 360k(a), that provides:

Except as provided in subsection (b) of this section [not relevant in this case], no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

### a.

■ Our first task is to determine whether the phrase "any requirement" encompasses state common law causes of action. Collagen submits that the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), makes clear that Congress' preemption of state "requirements" encompasses common law causes of action. In *Cipollone*, the Court considered the scope of the preemption provision in section 5(b) of the Public Health Cigarette Smoking Act of 1969, which provided, in pertinent part:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

*See id.* at 515, 112 S.Ct. at 2617 (quoting statute). A majority of the Justices agreed that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Id.* at 521, 112 S.Ct. at 2620 (plurality op. of Stevens, J., joined by The Chief Justice, and White and O'Connor, JJ.); *see also id.* at 547, 112 S.Ct. at 2634 (Scalia, J., joined by Thomas, J., concurring in the judgment in part and dissenting in part). These same Justices also agreed that the phrase "imposed under State law" included not only state statutes and regulations, but state common law as well. *Id.* at 521, 112 S.Ct. at 2620 (plurality), *id.* at 547, 112 S.Ct. at 2634 (Scalia, J., joined by Thomas, J., concurring in the judgment in part and dissenting in part).

*Cipollone* suggests that 21 U.S.C. § 360k(a)'s preemption of state "requirement[s]" "different from, or in addition to," those of the MDA is broad enough to include state common law causes of action. This view is buttressed by an FDA regulation that interprets the statute's preemptive sweep as

encompassing state requirements established by "statute, ordinance, regulation, or *court decision.*" 21 C.F.R. § 808.1(b) (emphasis added). Indeed, these interpretive guides have led every circuit that has considered the question to conclude that 21 U.S.C. § 360k(a) preempts at least some common law causes of action.[3] Moreover, although we did not specifically discuss the scope of the "any requirement" clause, our decision in *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1332–34 (7th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992), which held various common law causes of action against a manufacturer of intraocular lenses preempted by regulations promulgated under the MDA, certainly comports with the reasoning of these other circuits. Further, our decision in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 370–71 (7th Cir.1993) relied explicitly upon *Cipollone* to hold that the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), which forbids states from imposing labeling requirements "in addition to or different from" federal requirements, preempted various common law claims. We see no reason to depart from these authorities, and we therefore make explicit that which was at least implicit in *Slater*: The phrase "any requirement" in 21 U.S.C. § 360k(a) is broad enough to include at least some common law causes of action within the statute's preemptive scope.

b.

i.

The Mitchells seek to avoid the result dictated by the precedents discussed

above. They note that another provision of the MDA states that

> [c]ompliance with an order issued under this section shall not relieve any person from liability under Federal or State law. In awarding damages for economic loss in an action brought for the enforcement of any such liability, the value to the plaintiff in such action of any remedy provided him under such order shall be taken into account.

21 U.S.C. § 360h(d). The Mitchells submit that this portion of the MDA "saves" all common law causes of action from preemption. We cannot accept this contention. Although the existence of both a preemption provision and a savings clause in a federal statute indicates that Congress did not intend to preempt the field, *American Agric. Movement, Inc. v. Board of Trade*, 977 F.2d 1147, 1155 (7th Cir.1992), "where the preemptive intent of Congress is clear, a general savings clause cannot supersede the specific preemption provision." *Lohr v. Medtronic, Inc.*, 56 F.3d 1335, 1343 (11th Cir.1995) (analyzing 21 U.S.C. § 360h(d)) (citing *Morales*, 504 U.S. at 383–85, 112 S.Ct. at 2036–38). As we have noted above, the case law makes clear that Congress' reference to state "requirements" in preemption legislation evidences an intent to preempt at least some common law causes of action. Thus, we cannot agree that 21 U.S.C. § 360h(d) saves all such claims from preemption. At best, this provision saves some state law claims. *See Lohr*, 56 F.3d at 1343–44. However, nothing in the statute suggests which claims Congress meant to save. It is this question that we shall explore in the later pages of this opinion. At this point, in

---

3. *See, e.g., Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 27–28 (1st Cir.1995); *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 16 (1st Cir.1994); *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1323 & n. 4 (3d Cir.1995) ("[T]he term 'requirements' as used in § 360k encompasses state common law claims."), *cert. denied*, — U.S. ——, 116 S.Ct. 67, — L.Ed.2d —— (1995); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 542 (3d Cir.) (relying upon *Cipollone*), *cert. denied*, — U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Feldt v. Mentor Corp.*, 61 F.3d 431, 433 n. 2 (5th Cir.1995); *Reeves v. AcroMed Corp.*, 44 F.3d 300, 304 (5th Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1420–21 (5th Cir.), *cert. de-*

nied, — U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1168 (8th Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *National Bank of Commerce v. Kimberly–Clark Corp.*, 38 F.3d 988, 991 (8th Cir.1994) (holding that Congress' use of "requirement" evinced an intent for broad preemption of state tort laws); *Anguiano v. E.I. Du Pont De Nemours & Co.*, 44 F.3d 806, 809 (9th Cir.1995) ("In promulgating the MDA, Congress expressly intended to preempt state tort law."); *Lohr v. Medtronic, Inc.*, 56 F.3d 1335, 1342 (11th Cir.1995) ("Every circuit to consider the question agrees that common law actions are state requirements within the meaning of § 360k(a).").

answer to the Mitchells' submission, it suffices to say that our holding today that not every state law cause of action is preempted under the MDA is consistent with the view that 21 U.S.C. § 360h(d) saves at least some claims from MDA preemption.

## ii.

■ The Mitchells also invite our attention to an FDA regulation that provides that 21 U.S.C. § 360k(a):

> does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.

21 C.F.R. § 808.1(d). The Mitchells contend that this regulation saves all common law causes of action. They submit that the regulation constitutes a reasonable construction of the MDA and that it therefore is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ Under *Chevron,* the first step in interpreting a federal statute is to determine whether its meaning is unambiguous; if Congress has spoken on the precise question at issue and its intent is clear "that is the end of the matter." *Id.* at 842, 104 S.Ct. at 2781. However, if the statute is silent or ambiguous with respect to the issue in question, we are obliged to defer to the interpretation provided by the agency charged with the responsibility of administering the statute, as long as the agency's interpretation is reasonable. *Id.* at 843, 104 S.Ct. at 2781–82. The FDA is charged with the responsibility of administering the MDA. 21 U.S.C. § 371(a). Accordingly, the FDA's interpretations of ambiguous MDA provisions are entitled to deference under *Chevron.*

The scope of the phrase "any requirement" in 21 U.S.C. § 360k(a) is not completely unambiguous;[4] we are therefore justified in looking to the regulation to ascertain its meaning. Nevertheless, we cannot accept the Mitchells' argument that 21 C.F.R. § 808.1(d)(1) saves all common law causes of action from preemption under the MDA. We believe that it is far more reasonable to read this regulation more narrowly. We note at the outset that the regulation does not speak to common law claims; its reference to requirements of "general applicability" is not to common law causes of action but to electrical codes and the U.C.C.—positive enactments of law. Indeed, section 808.1(d), listing various state requirements that are not preempted by the statute, is noticeably silent on the matter of state tort claims when read in its entirety. *See Gile v. Optical Radiation Corp.,* 22 F.3d 540, 543 n. 2 (3d Cir.) ("21 C.F.R. § 808.1(d) sets forth examples of state or local requirements that are not preempted by § 360k. Significantly, the list of requirements exempted from § 360k does not include state tort or common law claims."), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *cf. Slater,* 961 F.2d at 1333–34 (concluding, in case not involving analysis of 21 C.F.R. § 808.1(d)(1), that MDA preempted some, but not all, state law causes of action of general applicability). Indeed, if we were to give 21 C.F.R. § 808.1(d) the breadth which the Mitchells urge that we give it, we would contradict squarely the manifest intent of the statute which, as we have already noted, clearly evidences a congressional intent to preempt some common law causes of action. *Cipollone* teaches that, when Congress uses phraseology almost identical to that used in 21 U.S.C. § 360k(a), it evidences an intent to preempt at least some common law causes of action. Our decision in *Shaw* confirms this view. *See Shaw,* 994 F.2d at 370–71. Under these circumstances, we would be obliged to give no deference to such an expansive reading of the regulation. "The judiciary is the final authority on issues of statutory con-

---

**4.** *See, e.g., Lohr,* 56 F.3d at 1343–45 (concluding that meaning of "requirement" in § 360k(a) was not so clear and unambiguous as to preclude reliance upon FDA requirement, set forth in an-

other portion of 21 C.F.R. § 808.1(d), that there must be specific MDA regulations or requirements relating to the medical device in question in order for state law claims to be preempted).

struction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9.

Accordingly, we cannot accept the view that 21 U.S.C. § 360k(a) may reasonably be read as failing to encompass *any* common law cause of action of general applicability. *Cf. Michael v. Shiley, Inc.,* 46 F.3d 1316, 1323 n. 4 (3d Cir.1995) (noting, without expressing a view on the validity of the regulation, that "[d]espite the reference in 21 C.F.R. § 808.1(d)(1) to laws of general applicability, we hold that the statutory language of § 360k preempts Michael's claims for breach of the implied warranties of merchantability and fitness[.]"), *cert. denied,* —— U.S. ——, 116 S.Ct. 67, —— L.Ed.2d —— (1995).[5]

### 3.

■ Having determined that 21 U.S.C. § 360k(a) is broad enough to preempt at least some common law causes of action, we now consider the precise scope of this preemption provision. Initially, we note that the language in 21 U.S.C. § 360k(a)(2) providing that the state "requirements" must "relate[ ] to the safety or effectiveness of the device or to any other matter in a requirement applicable to the device" under the MDA does not cabin significantly the preemptive sweep of the statute. In *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court recently emphasized that, when Congress uses the phrase "relates to" in a preemption provision, the phrase should be construed broadly. *See id.* at ——, 115 S.Ct. at 821 (defining the phrase "relates to" as "having a connection with or reference to") (citing *Morales v. Trans World Airlines,* 504 U.S. 374, 383–85, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992); *Shaw v. Delta Air Lines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). We must also consider the breadth of the language in § 360k(a). It expressly preempts claims relating not only to "safety and effectiveness," but also to *"any other matter* in-

cluded in a requirement," 21 U.S.C. § 360k(a)(2) (emphasis added). The section therefore encompasses state law claims that add requirements "different from, or in addition to," any requirement set forth in the MDA. *See Michael,* 46 F.3d at 1330–31; *cf. Cipollone,* 505 U.S. at 523, 112 S.Ct. at 2621 (plurality op.) (focusing upon whether legal duty serving as predicate for state law action was based upon smoking and health where preemptive sweep of statute was limited to state laws based upon smoking and health).

The Mitchells' chief contention, however, does not concern whether their state law claims "relate to" some MDA requirement applicable to Zyderm; rather it concerns whether such a "requirement" exists. The Mitchells focus upon a portion of 21 C.F.R. § 808.1(d) that provides:

> [S]tate or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.

21 C.F.R. § 808.1(d). This regulation makes clear, the Mitchells contend, that common law causes of action survive preemption unless the FDA has established "specific counterpart regulations" or "other specific requirements" for the medical device in question. They submit that, because no such "regulations" or "requirements" exist with respect to Zyderm, none of their common law causes of action are preempted.

In response, Collagen does not challenge the validity of the FDA regulation. *Cf. Lohr,* 56 F.3d at 1343–45 (holding that this portion of 21 C.F.R. § 808.1(d) is entitled to deference). Rather, it contends that the detailed premarket approval process constitutes a "specific requirement" applicable to Zyderm and other Class III medical devices. There-

---

5. The Eleventh Circuit's decision in *Lohr,* which found the scope of § 360k(a) ambiguous for purposes of deferring to another portion of 21 C.F.R. § 808.1(d), does not conflict with this reasoning; indeed, the Eleventh Circuit specifically held that some types of common law claims of general applicability were preempted by the MDA. *See* 56 F.3d at 1350–51.

fore, Collagen contends, any state laws that seek to add requirements "different from, or in addition to," the premarket approval process are preempted under the MDA.

Although the Mitchells correctly note that the FDA has issued no regulation or requirement relating exclusively to Zyderm, we cannot accept their argument. Our colleagues in the Eleventh Circuit recently explained the fallacy inherent in the argument that the FDA's premarket approval process does not constitute a "specific requirement" for purposes of 21 C.F.R. § 808.1(d):

> The most natural reading of the FDA's "specific requirements" language requires specificity in the nature of the requirements, not in their applicability to designated devices. The "applicable to a particular device" language, mirroring the statute, requires a court to ask whether the requirements in question apply to the device in question....

Construing the FDA's preemption regulations to require device specificity also contradicts the structure of the Act. Under the MDA, Class III devices are subject to the highest level of scrutiny through the PMA process.... Yet the PMA procedure's "requirements" under the MDA are not device-specific. Instead, the PMA process requires manufacturers to submit to an approval process standardized for all Class III devices.... It would be anomalous for the MDA to preempt certain claims which conflict with device-specific requirements placed on Class II devices ... but not preempt claims against devices subject to the MDA's most rigorous, albeit non-device-specific, procedures.

*Lohr*, 56 F.3d at 1345–46 (internal footnotes and citations omitted). We agree with this reasoning and conclude that the premarket approval process constitutes a "specific requirement" for purposes of 21 C.F.R. § 808.1(d) and 21 U.S.C. § 360k(a). In doing so, we align ourselves with the majority of circuits to have considered this question.[6]

**6.** *See, e.g., Michael v. Shiley, Inc.*, 46 F.3d 1316, 1324 (3d Cir.1995) (noting that premarket approval procedures present "specific requirements applicable to a particular device under the act"), *cert. denied*, —— U.S. ——, 116 S.Ct. 67, —— L.Ed.2d —— (1995); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1169 (8th Cir.1994) ("The premarket approval process is a specific requirement for a device within the meaning of 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(d)."), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1421–22 & n. 3, 1424 & n. 8 (5th Cir.) (stating, in case involving Zyderm, that the "Class III PMA process" is a "specific requirement" for purposes of § 808.1(d)), *cert. denied*, —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v. Collagen Corp.*, 983 F.2d 1130, 1134 (1st Cir.) (op. of Torruella, J., joined by Aldrich and Campbell, JJ.) ("FDA regulations provide that preemption does not apply when the FDA has issued no regulations or other requirements specific to the particular device.... In this case, it is clear that the FDA has imposed requirements on *Zyderm* related to labeling, design, manufacturing and other aspects of the device pursuant to the MDA scheme.") (emphasis added), *cert. denied*, —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *see also Lohr v. Medtronic, Inc.*, 56 F.3d 1335, 1346 (11th Cir. 1995) (noting agreement with rationale that PMA process constitutes a "specific requirement" for purposes of § 808.1(d) in case involving Class III device exempted from the PMA process); *cf. Feldt v. Mentor Corp.*, 61 F.3d 431, 436 & n. 5 (5th Cir.1995) (noting, in case involving Class III device not subject to PMA process, that FDA requirements need not be device-specific) (citing *Moore v. Kimberly–Clark Corp.*, 867 F.2d 243 (5th Cir.1989) (Class II device case)). *But cf. LaMontagne v. E.I. Du Pont De Nemours & Co.*, 41 F.3d 846, 855 (2d Cir.1994) (rejecting MDA preemption argument "substantially for the reasons stated by the district court in its opinion"; district court, 834 F.Supp. 576, 582–85 (D.Conn.1993), concluded that no specific requirements existed with respect to a device that ultimately had been classified as a Class III device, but which had not been subjected to PMA process at the time it was implanted into the plaintiff).

The Ninth Circuit's decision in *Anguiano v. E.I. Du Pont De Nemours & Co.*, 44 F.3d 806 (9th Cir.1995), has been cited as adopting the rule advocated by the Mitchells in this case. *See Lohr*, 56 F.3d at 1346. *Anguiano* involved a Class II medical device that, by definition, was not subject to the PMA process. Although the court in *Anguiano* did state that "the scope of preemption is limited to instances where there are specific FDA requirements applicable to a particular device," 44 F.3d at 809 (quotations and citations omitted), the court later noted that the "argument that the MDA regulatory framework preempts state law, even absent specific provisions, applies only to Class III devices, not Class II devices." *Id.* at 810. The latter statement suggests that the Ninth Circuit's position comports with the majority of other circuits, at least with respect to Class III devices. Indeed, the court in *Anguiano* cited to decisions from the First and Fifth Circuits to support the statement referred to by *Lohr*, yet, as is indicated above, the

**1280**

4.

We now must analyze each of the Mitchells' claims against Collagen to determine whether they would add requirements "different from, or in addition to," the PMA process or other FDA requirements and therefore be preempted. Collagen submits that all of the Mitchells' claims are preempted. The Mitchells contend that recent court decisions have made clear that at least their fraud, misrepresentation, and breach of warranty claims survive preemption. In response, Collagen argues that the Mitchells may not benefit from these decisions because they have not made a sufficient summary judgment record.

a. Strict Liability & Negligence Claims

■ At the outset, we note that the Mitchells do not contend seriously that their strict liability and negligence claims would neither "establish [n]or continue in effect" a requirement "different from, or in addition to," the requirements involved in the PMA process. Read generously, their brief addresses these claims only in its section presenting the argument that 21 C.F.R. § 808.1(d) saves all common law causes of

action from preemption. *See* Appellant's Br. at 15–21. As we noted above, that argument is flawed.

In any event, these claims are preempted by the MDA. The Mitchells' strict liability claim consists of allegations that Zyderm was "an unreasonably dangerous product" and that Collagen "knew or in the course of reasonable care should have known" that Zyderm "was unreasonably dangerous and had the potential for causing serious immunological and/or autoimmune reactions, damage and injuries when injected into humans for its intended use and purpose." *See* R.1, Ex.A at 2–3, Count I, ¶¶ 7, 9. The complaint alleges the following negligence claims: "inadequate warnings accompanied" Zyderm, *id.* at 2, Count I, ¶ 8, and "Collagen Corporation was negligent in the design, testing, approval, manufacturing, marketing and sale" of Zyderm, *id.* at 5, Count IV, ¶ 2.

■ We agree with several other circuits which have considered the issue that, with respect to a Class III device that has undergone the PMA process, such claims are preempted because they undoubtedly would add requirements "different from, or in addition to," those set forth in the MDA.[7] "FDA

---

First and Fifth Circuits have concluded that the premarket approval process constitutes a "specific requirement" applicable to "particular device[s]" for purposes of 21 C.F.R. § 808.1(d).

7. *See, e.g., Michael v. Shiley, Inc.*, 46 F.3d 1316, 1324 (3d Cir.1995) (citing *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 543–44 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994), for the proposition that "state law negligence and strict product liability claims are pre-empted under § 360k on account of the potential conflict with FDA labeling, design, and manufacturing requirements"), *cert. denied,* —— U.S. ——, 116 S.Ct. 67, —— L.Ed.2d —— (1995); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1169 (8th Cir.1994) (strict products liability and negligent instruction, labeling, warning, and testing claims), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1422 & n. 5 (5th Cir.) (failure to warn, defective design, and defective manufacturing claims), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v. Collagen Corp.*, 983 F.2d 1130, 1135–36 (1st Cir.1993) (op. of Torruella, J., joined by Aldrich and Campbell, JJ.) (strict liability and negligent design, manufacturing, marketing, and sales claims), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *see also Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 30–31 (1st Cir.1995)

(adopting analysis of district court, which held claims for negligent design, development, and manufacture preempted); *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 708 (5th Cir.1995) (noting, in intraocular lens case, "[i]f plaintiffs' products liability claims for recovery due to the lenses' dangers are preempted, then it would seem ridiculous to say that a claim for failure to warn about these dangers could survive"); *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 18–19 (1st Cir.1994) (negligent failure to warn and negligent manufacturing claims preempted for Class III device not subject to PMA process); *cf. Feldt v. Mentor Corp.*, 61 F.3d 431, 436 & n. 6 (5th Cir.1995) (holding, with respect to Class III device not subject to PMA process, that negligent marketing and inadequate warning claims were preempted, but defective design claim was not preempted because no FDA design requirement existed); *Lohr*, 56 F.3d at 1347–52 (11th Cir. 1995) (holding, with respect to Class III device that had not undergone PMA process, that negligent design and strict liability claims were not preempted, but that MDA's good manufacturing regulations, warning, and labeling requirements nonetheless preempted negligent manufacture and negligent failure to warn claims).

In *Reeves v. AcroMed Corp.*, 44 F.3d 300, 304–05 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct.

approval of a premarket application shows the FDA has reviewed a device's testing, design specifications, intended use, manufacturing method, performance standard, and labelling, ... and decided the device is safe and effective." *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1169 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995) (citing 21 U.S.C. §§ 360c(a)(2), 360e(c)(1)); *see also Ministry of Health, Province of Ontario, Can. v. Shiley, Inc.*, 858 F.Supp. 1426, 1438–39 (C.D.Cal. 1994) (stating that "a finding of negligence would mean implicitly finding that the FDA approval was not good enough," and that a successful strict liability claim would require a court to hold that the product was unsafe and dangerous "in opposition to the contrary determination made by the FDA"); *cf. Slater*, 961 F.2d at 1332–33 (indicating that claims for inadequate testing, defective design, and failure to warn were preempted in case involving device not subject to PMA process).

### b. Mislabeling, Misbranding, and Adulteration

#### i.

■ The Mitchells' complaint also alleged that Zyderm was a "mislabeled and/or adulterated product." R.1, Ex.A at 5, Count IV, ¶ 2. To the extent that this allegation charges that Zyderm, despite conformity to the FDA's premarket approval process, was mislabeled, misbranded, or adulterated, the Mitchells' claim would be preempted for the reasons discussed in the previous subsection.

In essence, the claim would seek to add requirements "different from, or in addition to," those established through the FDA's premarket approval process. *See Martello*, 42 F.3d at 1169; *see also Slater*, 961 F.2d at 1332–34; *cf.* 21 C.F.R. § 808.1(d)(6)(ii) (noting that state requirements prohibiting manufacture of misbranded and adulterated devices are preempted to the extent they establish substantive requirements "different from, or in addition to, a Federal requirement established under the act").

■ On the other hand, it is possible to view the Mitchells' claim as alleging that Zyderm was mislabeled or adulterated because Collagen failed to meet the labeling and purity standards established *by* the PMA process. Various circuits have suggested that this is a distinction without a difference—such claims are nonetheless preempted.[8] A principal tenet of these decisions is that a court applying state law to ensure compliance with the federal standards may get the federal standards wrong and, therefore, end up imposing a requirement "different from or in addition to" the requirements established under the MDA. *See Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 29 (1st Cir.1995).

When the claim is that a particular product is adulterated because it does not comply with standards explicitly established by the FDA or that a particular label does not comply with standards explicitly established by the FDA, the correctness of this approach is not self-evident. In such circumstances, the existence of the FDA-approved paradigm ap-

2251, 132 L.Ed.2d 258 (1995), the Fifth Circuit held that failure to warn claims were preempted by the MDA with respect to a Class III device not subject to the PMA process. The opinion indicates that various negligent design and manufacturing defect claims went to the jury during the district court proceedings, but does not comment upon whether such claims are or are not preempted under the MDA. *See id.* at 307–08.

8. *See, e.g., Talbott v. C.R. Bard, Inc.*, 63 F.3d 25– 31 (1st Cir.1995) (analyzing fraud against the FDA claim, but reasoning generally that any state law suit based upon a claim that the defendant had failed to comply with the MDA would be preempted because "if state courts erred in their application of the MDA, they would effectively be imposing requirements 'different from, or in addition to' those imposed by federal law"); *Lohr v.*

*Medtronic, Inc.*, 56 F.3d 1335, 1343 (11th Cir. 1995) ("[P]reemption under the MDA cannot be defeated by a common-law suit alleging a violation of the statutory standards."); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir.) (noting, with respect to intraocular lens device, that adulteration claim based on failure to meet FDA standards was preempted; "[t]he FDA can determine an investigational device to be adulterated if requirements under [applicable regulations] are not complied with"), *cert. denied*, —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *cf. Reeves v. AcroMed Corp.*, 44 F.3d 300, 307 & n. 4 (5th Cir.) ("We ... decline ... to create an unwieldy exception ... in cases where manufacturers ... violate FDA regulations."), *cert. denied*, —— U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995).

pears to ensure that state law cannot impose requirements "different from or in addition to" federal law. The Eighth Circuit has stated that, "when a statute only preempts state requirements that are different from or in addition to those imposed by federal law, plaintiffs may still recover under state tort law when defendants fail to comply with the federal requirements." *National Bank of Commerce v. Kimberly–Clark Corp.*, 38 F.3d 988, 993 (8th Cir.1994); *see also Martello*, 42 F.3d at 1169 ("Martello did not claim the AOSEPT he used did not comply with federal regulations[.]"); *cf. Slater*, 961 F.2d at 1334 (commenting that the scope of MDA preemption is "limited to efforts by states to impose sanctions for compliance with federal regulations[.]"). In the absence of more explicit legislative or regulatory direction,[9] we hesitate to say, therefore, that an adulteration claim based on a product's failure to meet PMA standards—standards that have been explicitly set forth by the FDA—does not survive MDA preemption. Such a claim seeks merely to enforce the federal standard, not to add requirements "different from, or in addition to," it.

ii.

▮ The Mitchells' summary judgment filings suggest that their mislabeling and misbranding claims were directed at the labeling and branding of Zyderm generally, *see, e.g.*, R.12 at 13, and therefore were preempted for the reasons discussed above. Their adulteration claim seems to have concerned Zyderm's alleged failure to meet the performance standards set forth in its PMA. *See id.* at 14. Nevertheless, even construing the Mitchells' claim in this fashion, we hold that the district court did not err in granting Collagen summary judgment because Collagen established that there was no genuine issue of material fact that Zyderm was unadulterated. In its statement of material facts "in which there [was] no genuine issue," Collagen contended that "[t]here is no evidence to support Barbara Mitchell's claim for mislabeling and/or misbranding and/or adultera-

tion." R.5 at 3 ¶ 18. Collagen supported this claim with an affidavit from Ross Erickson, Collagen's Vice President for Regulatory Affairs and Quality Assurance. Mr. Erickson asseverated that:

> Prior to 1988, and during that period of time in 1988 when plaintiff Barbara Mitchell was being treated with Zyderm and Zyplast, neither Zyderm nor Zyplast was ever determined by the FDA to be either mislabeled or adulterated. Any such citation would be in the records for which I have primary responsibility.

R.3, Aff. of R. Erickson ¶ F. In response to these submissions, the Mitchells stated that they "would dispute the veracity and/or materiality of Defendant Collagen Corporation's alleged material facts, in particular as to allegation number[ ] 18." R.13 at 2 ¶ 3. However, the Mitchells introduced no affidavits, depositions, or other materials to counter the Erickson affidavit.

Although the Mitchells contended at oral argument, as well as in their brief, that such submissions were unnecessary because the district court was ruling on purely legal issues, the Record makes clear that Collagen argued in the district court not only that adulteration claims should be preempted per se, but also that no genuine issue of material fact existed with respect to the Mitchells' adulteration claim. Indeed, the district court explicitly ruled that Collagen alternatively was entitled to summary judgment on the adulteration claim because the Mitchells had "pointed to no evidence of adulteration upon which they could go to a jury." 870 F.Supp. at 897. The Mitchells' failure to come forward with any evidence in response to Collagen's submission that there was no genuine issue of material fact with respect to the adulteration claim entitled Collagen to summary judgment. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). "[S]ummary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

9. We note that the existing regulations, albeit laconic, presently lend some support for the view that an adulteration claim based on a product's failure to meet PMA standards survives MDA preemption. *See* 21 C.F.R. § 808.1(d)(2) (stating that state or local requirements "equal to, or substantially identical to," federal requirements imposed under the MDA are not preempted).

which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

### c. Fraud and Misrepresentation

The Mitchells' complaint raised two distinct claims for fraud and misrepresentation:

> Collagen Corporation[ ] procured approval to market and sell the named products through fraud and misrepresentation. Defendant, Collagen Corporation[,] markets and sells the named products through fraud and misrepresentations, by act and/or omission.

R.1, Ex.A at 5, Count IV, ¶ 2. The allegation in the first sentence constitutes a claim that Collagen defrauded the FDA to obtain approval to sell Zyderm; the second sentence alleges that Collagen committed fraud in the course of selling its product.

### i.

The Mitchells' "fraud on the FDA" claim is preempted. As the Third Circuit recently noted, such claims seek

> to encourage the district court to review the PMA application [the defendant] submitted to the FDA. This inquiry could ultimately require that a court determine whether the information ... submitted was truthful, whether it was complete, whether FDA procedures sufficed to avoid a material misrepresentation, and whether the FDA should have or would have approved the device despite the misrepresentations. In sum, this claim requires a court, applying state law, to perform the same functions initially entrusted to the FDA.

*Michael v. Shiley, Inc.,* 46 F.3d 1316, 1329 (3d Cir.1995), *cert. denied,* ⸺ U.S. ⸺, 116 S.Ct. 67, ⸺ L.Ed.2d ⸺ (1995). We agree with the Third Circuit that 21 U.S.C. § 360k(a) "does not permit such a searching state inquiry into the inner workings of FDA procedures." *Id.; accord Talbott v. C.R. Bard, Inc.,* 63 F.3d 25, 28–29 (1st Cir.1995); *Reeves,* 44 F.3d at 306. "Surely, where the FDA was authorized to render the expert decision on Collagen's use and labeling, it, and not some jury or judge, is best suited to

determine the factual issues and what their effect would have been on its original conclusions. Further, if the court erred, and incorrectly posited the effect on the FDA's use and labeling decision, this would impose a state requirement 'which is different from, or in addition to, any requirement applicable ... to the device.'" *King,* 983 F.2d at 1140 (Aldrich and Campbell, JJ., concurring) (quoting 21 U.S.C. § 360k(a)).

### ii.

With respect to the Mitchells' other fraud claim, we note first that, in the district court, the Mitchells did not specify the nature of Collagen's alleged fraudulent statements or misrepresentations. *Cf.* Fed. R.Civ.P. 9(b). The district court viewed their claim as one alleging that Collagen's packaging and labeling were misleading; in other words, the court considered the claim as equivalent to the misbranding and mislabeling claims. *See* 870 F.Supp. at 897. Therefore, for the reasons set forth in our earlier discussion of mislabeling, misbranding, and adulteration, the district court concluded correctly that the Mitchells' fraud and misrepresentation claims were preempted. *See, e.g., Michael,* 46 F.3d at 1331 (indicating that fraud claims would be preempted to the extent that they alleged fraudulent labeling); *see also* 21 U.S.C. § 360e(d)(2)(D) (requiring FDA to deny premarket approval of labeling that is "false or misleading in any particular").

On appeal, the Mitchells now have characterized their claim as one alleging that Collagen's "advertising and promotional materials" were fraudulent. *See* Reply Br. at 3. This belated refinement of their claim seeks to benefit from the Third Circuit's decision in *Michael v. Shiley, Inc.,* 46 F.3d 1316 (3d Cir.1995), *cert. denied,* ⸺ U.S. ⸺, 116 S.Ct. 67, ⸺ L.Ed.2d ⸺ (1995), which held that fraudulent advertising claims were not preempted under the MDA. The Third Circuit reasoned that there were no requirements in the MDA that governed the promotional materials at issue in the case. Consequently, the court held that a state law fraud claim would not add any requirement

"different from, or in addition to," a requirement under the MDA. *See id.* at 1330.

Even were we to give the Mitchells the benefit of the doubt and construe their claim with the specificity they have added on appeal, their claim nonetheless would fail. Unlike the defendant in *Michael,* Collagen, through the exhibits attached to the affidavit of Ross Erickson, established that the FDA had placed restrictions on Collagen's advertising and promotional materials.[10] The Mitchells did not introduce affidavits, depositions, or other materials either to rebut Collagen's submissions or to demonstrate that there were genuine issues with respect to other promotional materials. Accordingly, summary judgment was proper even if the Mitchells' claim could be construed as applying to fraud and misrepresentation with respect to Collagen's advertising and promotional materials. *See R.R. Donnelley & Sons Co.,* 42 F.3d at 443; *see also Meredith v. Allsteel, Inc.,* 11 F.3d 1354, 1358 (7th Cir.1993) ("We may affirm the district court's grant of summary judgment on an alternative basis, as long as that basis finds support in the record.").

### d. Warranty

The Mitchells' complaint raised the following warranty claim: "At all material times, Defendant, Collagen Corporation ... warranted and represented to Plaintiff, Barbara Mitchell, that [Zyderm was] safe for [its] intended use and purpose." R.1, Ex.A at 2, Count I, ¶ 5. Before the district court, the Mitchells neither specified what warranties were at issue nor what statements of warranty Collagen allegedly provided.

#### i. Implied Warranty

Various circuits have held that implied warranty claims are preempted with respect to devices that have undergone the PMA process.[11] These courts have emphasized that such claims, as they relate to manufacturing or design problems, "by necessity depend[ ] upon the accepted standards for the design and manufacture of products" in the state whose law provides the cause of action—standards that "may deviate from the FDA's determinations in the PMA process or from the FDA's 'good manufacturing practices.'" *Michael,* 46 F.3d at 1325; *see also Mendes,* 18 F.3d at 19. Likewise, claims based upon inadequate warnings seek to add requirements "different from, or in addition to," the labeling approved by the FDA. *Mendes,* 18 F.3d at 18. In sum, "[a]s an implied warranty is a requirement upon a product that arises exclusively from the operation of state contract law, [implied warranty] claim[s] [are] preempted expressly by the MDA." *King,* 983 F.2d at 1135 (op. of Torruella, J., joined by Aldrich and Campbell, JJ.). We agree with the analysis of these other circuits, and therefore hold that the Mitchells' claim is preempted to the extent it alleges violation of an implied warranty relating to the design, manufacturing, or labeling of Zyderm.

#### ii. Express Warranty

As the Mitchells note on appeal, there is significant authority for the proposi-

10. *See, e.g.,* R.6, Ex.13 at 2 (Dec. 1981 letter from Acting Director of FDA Bureau of Medical Devices approving supplemental premarket application and indicating that "[n]o advertisement for this device shall recommend or imply that the device may be used for any use that is not mentioned in the approved labeling for the device. All written promotional material shall state the indications, contraindications, warnings, precautions and adverse effects of the device"); R.6, Ex.26 (Nov.1983 letter ordering Collagen to "refrain from any reference to 'FDA approval' or 'marketing clearance by the FDA' in all promotional material or labeling for Zyderm").

11. *See, e.g., Michael,* 46 F.3d at 1324–25; *Martello v. Ciba Vision Corp.,* 42 F.3d at 1168–69; *King v. Collagen Corp.,* 983 F.2d 1130, 1135 (1st Cir.) (op. of Torruella, J., joined by Aldrich and Camp-

bell, JJ.), *cert. denied,* — U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *see also Talbott v. C.R. Bard, Inc.,* 63 F.3d 25, 30–31 (1st Cir.1995) (adopting analysis of district court, which held implied warranty claim preempted); *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 18–19 (1st Cir.1994) (finding implied warranty claim preempted for Class III device not subject to PMA process); *Duncan v. Iolab Corp.,* 12 F.3d 194, 195 (11th Cir.1994) (per curiam) (same for intraocular lens); *cf. Feldt v. Mentor Corp.,* 61 F.3d 431, 437 & n. 9 (5th Cir.1995) (holding that implied warranty claim relating to defective design was not preempted with respect to Class III device that had not undergone PMA process and distinguishing *Michael* on the ground that the device at issue in *Michael* had undergone the PMA process).

tion that express warranty claims are not preempted by the MDA. The Third Circuit stated in *Michael v. Shiley, Inc.,* that

> [e]xpress warranties arise from the representations of the parties which are made the basis of the bargain and do not result from the independent operation of state law. . . . The parties to a contract, not the state, define the substantive obligations of the contract and hence any express warranties. While the state provides for the enforcement of the parties' bargain, it does not define each party's duties.

46 F.3d at 1325. The court went on to note that its reasoning comported with the Supreme Court's recent decision in *American Airlines, Inc. v. Wolens,* — U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In *Wolens,* the Court considered the scope of the preemption provision in the Airline Deregulation Act of 1978, which provided, in pertinent part:

> [N]o State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier.

*See* — U.S. at ——, 115 S.Ct. at 821 (quoting 49 U.S.C. § 1305(a)(1)). The Court concluded that the statute did not preempt suits "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* at ——, 115 S.Ct. at 824. Focusing upon the phrase "enact or enforce" in the statutory scheme, the Court emphasized that "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law[.]' " *Id.* (internal quotation and citation omitted) (citing *Cipollone,* 505 U.S. at 504, 112 S.Ct. at 2608 (plurality op.) ("[A] common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement imposed under State law[.]' ")). The Court in *Wolens* concluded, "[a] remedy confined to a contract's terms simply holds parties to their agreements[.]" — U.S. at ——, 115 S.Ct. at 824.

The operative phrase in the preemption provision at issue in *Wolens,* "enact and enforce," differs from the MDA's command that states may not "establish or continue in effect" any requirements different from or in addition to those set forth in the MDA. *Compare* 49 U.S.C. § 1305(a)(1) *with* 21 U.S.C. § 360k(a). Nevertheless, the reasoning in *Michael* does find significant support both in *Wolens* and in the portion of *Cipollone* quoted above. Moreover, we note that the Third Circuit also reasoned that, with respect to the MDA in particular, enforcement of an express warranty would not seek to add requirements "different from, or in addition to," those set forth in the MDA, but rather, would "enforce the very language which the FDA approved" on the particular label at issue. *See* 46 F.3d at 1328. We agree.

Collagen seeks to counter the persuasiveness of *Michael* by noting that other circuits disagree. Collagen principally cites the First Circuit's decision in *King.* However, although Judge Torruella's separate opinion in *King* supports Collagen's argument that express warranty claims are preempted, *see* 983 F.2d at 1135 (op. of Torruella, J.), a majority in *King* declined to address the express warranty issue and suggested that "[e]xpress warranty might have created a problem for the defense of preemption." *Id.* at 1137 & n. 3 (Aldrich and Campbell, JJ., concurring) (citing *Cipollone,* at 524–27, 112 S.Ct. at 2622–23). Thus, contrary to Collagen's submission, King may not stand for the proposition that express warranty claims are preempted under the MDA; in turn, those decisions cited by Collagen that rely upon *King* for this proposition without additional analysis are not persuasive. *See, e.g., Martello,* 42 F.3d at 1169. *But see Talbott v. C.R. Bard, Inc.,* 63 F.3d 25, 30–31 (1st Cir. 1995) (Campbell, J.) (affirming district court's dismissal of express warranty claim and stating that the Third Circuit's express warranty analysis in *Michael* "appears to be inconsistent with this circuit's approach as set forth in *King,* 983 F.2d at 1135," but not commenting on footnote 3 of Judge Aldrich's opinion in *King* ). Accordingly, we hold, consistent with *Michael,* that the MDA does not preempt express warranty claims.

 Once again, however, the Mitchells' summary judgment filings prevent them

from benefitting from this analysis. As we noted above, the Mitchells never specified in the district court whether their claim was based upon implied or express warranties. Likewise, the Mitchells never pointed to any express warranty that Collagen allegedly violated. In response to Collagen's submission that there was no genuine issue of material fact with respect to their complaint against Collagen, the Mitchells introduced no affidavits, depositions, documents, or other evidence creating a genuine issue of fact as to the existence of any express warranty provided by Collagen. Accordingly, we must hold that the Mitchells failed to meet their burden at the summary judgment stage and that, to the extent they raised an express warranty claim in their complaint, summary judgment was proper even though such claims are not preempted by the MDA. *See R.R. Donnelley & Sons Co.,* 42 F.3d at 443; *see also Meredith,* 11 F.3d at 1358 ("We may affirm the district court's grant of summary judgment on an alternative basis, as long as that basis finds support in the record.").

### Conclusion

For the foregoing reasons, the decision of the district court is affirmed.

AFFIRMED