**Dr. Annelle C. BLANCHARD**

v.

**COLLAGEN CORPORATION.**

Civ. A. No. 94–1177.

United States District Court,
E.D. Louisiana.

Dec. 12, 1995.

tissue deficiencies resulting from disease, trauma, or age. Blanchard received a series of injections of Zyplast into her lower lip. Within a few days of receiving one of these injections, she began to experience the onset of craniofacial varicella zoster, a recurring viral condition that causes lesions and disfiguring scars. Blanchard alleges that her condition was caused by an injection of collagen contaminated with a bovine herpes virus. She claims that Collagen is strictly liable and/or negligent for failure to warn and improper design, construction, manufacture, and testing of the collagen.

Before the court is Collagen's motion for summary judgment. Collagen seeks to dismiss plaintiff's suit on the ground of federal preemption based on the MDA's preemption statute, 21 U.S.C. § 360k(a), and the undisputed fact that Zyplast received pre-market approval from the Food and Drug Administration (FDA).

Under the Medical Device Amendments of 1976 (MDA), 21 U.S.C. §§ 360(c), et seq., to the Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. §§ 301, et seq. (as amended by the Safe Medical Devices Act of 1990, Pub.L. No. 101–629, 104 Stat. 4511–30 (1990)), medical devices are subject to different degrees of regulation depending on the nature of the device and its risks to health, if any. The FDA, which has comprehensive regulatory authority over medical devices, has classified Zyplast as a Class III device.[1] With certain exceptions not relevant here, Class III devices must undergo a rigorous pre-market approval process (PMA).[2] PMA requires the applicant to present the FDA with "all information" known or reasonably knowable about the device, including proposed labeling, testing data, descriptions of design, manufacturing methods and materials, and proposed uses. 21 U.S.C. § 360e(c)(1)(A–G).[3]

The issue before the court is whether the MDA, and in particular, the FDA's pre-mar-

Patrick M. Amedee, Alton Jeorld Hall, Jr., Vosbein, Delise, Amedee & Bertrand, New Orleans, LA, for plaintiff.

Lawrence A. Mann, Leake & Andersson, New Orleans, LA, William Curt Webb, Joe W. Redden, Jr., Beck, Redden & Secrest, Houston, TX, William Paul Wilkins, O'Neal, Walsh & Associates, Baton Rouge, LA, for defendant.

### ORDER AND REASONS

MENTZ, District Judge.

### I. FACTUAL BACKGROUND

The plaintiff, Dr. Annelle C. Blanchard, brought this product liability action under Louisiana state tort laws against Collagen Corporation as the manufacturer and distributer of Zyplast Collagen Implant. Zyplast is a product made from bovine collagen. It is injected under the skin to correct soft

1. Section 360c(a)(1)(C) of the MDA defines a Class III device as:
   A device which ... (I) is purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or (II) presents a potential unreasonable risk of illness or injury.

2. Section 360c(a)(1)(C) provides that Class III devices "[are] subject ... to premarket approval to provide reasonable assurance of its safety and effectiveness."

3. Section 360e sets forth the premarket approval process and provides in pertinent part:

ket approval of Zyplast, preempts any of Blanchard's state law claims. For the reasons that follow, the court grants partial summary judgment dismissing all claims, except for strict liability and negligence based on the alleged contamination of the product.

## II. ANALYSIS

### A. Standard for Summary Judgment

Summary judgment is appropriate where the record shows no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### B. General Principles of Federal Preemption Analysis

■ The foundation for federal preemption of state laws is found in the Supremacy Clause of the United States Constitution, which mandates that "[t]his Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. "State laws that conflict with federal laws and regulations, therefore, are preempted." *King v. Collagen Corp.,* 983 F.2d 1130, 1133 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) (citing *Malone v. White Motor Corp.,* 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)).

■ Whether a federal statute preempts state law is a question of congressional intent. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). There is a presumption against preemption unless congressional intent to preempt is clear and manifest. *See Department of Revenue of Oregon v. ACF Industries, Inc.,* —— U.S. ——, ——, 114 S.Ct. 843, 851, 127 L.Ed.2d 165 (1994); *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662–63, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515–16, 112 S.Ct. 2608, 2617, 120

(c) Application for premarket approval. (1) Any person may file with the Secretary an application for premarket approval for a class III device. Such an application for a device shall contain—
  (A) full reports of all information, published or known to or which should reasonably be known to the applicant, concerning investigations which have been made to show whether or not such device is safe and effective;
  (B) a full statement of the components, ingredients, and properties and of the principle or principles of operation, of such device;
  (C) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device;
  (D) an identifying reference to any performance standard under [§ 360d] which would be applicable to any aspect of such device if it were a class II device, and either adequate information to show that such aspect of such device fully meets such performance standard or adequate information to justify any deviation from such standard;
  (E) such samples of such device and of components thereof as the Secretary may reasonably require, except that where the submission of such samples is impracticable or unduly burdensome, the requirement of this subparagraph may be met by the submission of complete information concerning the location of one or more such devices readily available for examination and testing;
  (F) specimens of the labeling proposed to be used for such device; and
  (G) such other information relevant to the subject matter of the application as the Secretary, with the concurrence of the appropriate panel under [§ 360c] may require.
21 U.S.C. § 360e(c)(1)(A)–(G).
  The FDA has extensive power to police quality control and impose penalties for violations of FDA approved manufacturing processes. The MDA requires a manufacturer to maintain post-approval information and to produce such to the FDA upon request. 21 U.S.C. § 360i(a). The FDA may withdraw approval of a device where new information shows that the device does not conform to conditions of PMA, the device has become unsafe or its labeling inadequate, or manufacturing methods and facilities are not in compliance with MDA good manufacturing requirements. 21 U.S.C. § 360e(e). *See also* 21 U.S.C. § 360e(d)(2)(A)–(D) (requiring denial of PMA application for insufficient showing in these same areas).

L.Ed.2d 407 (1992); *Rice*, 331 U.S. at 229–31, 67 S.Ct. at 1152. This presumption is based on principles of federalism which include a deference for state historic police powers, such as the regulation of health and safety matters, and the provision of tort remedies to compensate for personal injuries, particularly when there is no federal remedy for the plaintiff's injury. *See Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994) (quoting *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 21, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987)); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251–52, 104 S.Ct. 615, 623, 78 L.Ed.2d 443 (1984) ("it is difficult to believe that Congress would, without comment, remove all means of recourse for those injured by illegal conduct"); *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984).

■ Blanchard's claims concern rights and remedies regarded as within the scope of traditional state powers, namely, tort compensation and health and safety. *See* W. Prosser, *Handbook of the Law of Torts,* § 5 at 23 (4th ed. 1971) (state tort law unquestionably relates to matters of health and safety). In addition, Blanchard will be left without a remedy if her claims are preempted because there is no private right of action to recover damages or other relief under the MDA. *See Stamps v. Collagen Corp.,* 984 F.2d 1416, 1425 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). Therefore, Collagen, who as defendant bears the burden of demonstrating preemption, *see Silkwood,* 464 U.S. at 254–56, 104 S.Ct. at 625, must establish that Congress has spoken clearly and made its intention to preempt unmistakable.

■ Congressional intent to preempt state law may be stated expressly in statutory language. In the absence of an express preemption, Congressional intent to preempt a state law may be inferred where comprehensive federal law entirely occupies a given regulatory field to the exclusion of state law, or where the state law actually conflicts with a federal law. *See English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).

■ The United States Supreme Court recently addressed express and implied preemption in *Cipollone:*

> When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation.

505 U.S. at 517, 112 S.Ct. at 2618. "There is a presumption that a pre-emption clause is a reliable indicium of congressional intent." *Myrick v. Freuhauf Corp.,* 13 F.3d 1516, 1525 (11th Cir.1994), *aff'd sub nom. Freightliner Corp. v. Myrick,* —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

■ In order to discern congressional intent, the starting place is the statute itself. *CSX Transp.,* 507 U.S. at 662–63, 113 S.Ct. at 1737. "[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). In addition, the courts must attempt to give effect to all sections of an act of Congress where possible, rather than enforce one section at the expense of another. *See American Textile Mfrs. Inst., Inc. v. Donovan,* 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981); *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1120 (3rd Cir.1990).

■ In cases in which Congress has provided express preemption, the courts must give the preemption statute a "fair but narrow reading" which will give effect to Congress' purpose without undermining "the strong presumption against pre-emption." *Cipollone,* 505 U.S. at 522–24, 112 S.Ct. at 2621. The predicate legal duty of each common law claim must be examined in light of the specific language of the preemption provision to determine whether it is in fact preempted. *Id.*

■ If the statute is silent or ambiguous regarding congressional intent, then the court may look to an agency's regulations for guidance concerning interpretation of congressional intent. The court should defer to a federal agency's construction of such a statute, unless the agency's interpretation is not reasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

> [A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

*Id.* 467 U.S. at 842–44, 104 S.Ct. at 2781–82. *See Mitchell v. Collagen Corp.,* 67 F.3d 1268, 1276 (7th Cir.1995) (applying the *Chevron* analysis to § 360k(a)).

With these general principles in mind, the specific act in question must be considered.

### C. The MDA, Its Regulations, and Fifth Circuit Precedent

■ The MDA expressly addresses the issue of preemption in two statutory provisions—a preemption clause and a savings clause. These two provisions must be considered together in determining whether the MDA preempts Blanchard's state law claims "because both clauses explicitly deal with the

subject of what is and is not preempted." *Myrick,* 13 F.3d at 1526 (addressing in tandem the preemption and savings clauses under the National Traffic and Motor Vehicle Safety Act (Safety Act), which are similar to those in the case at bar); *see also Perry v. Mercedes Benz of North America, Inc.,* 957 F.2d 1257, 1260 (5th Cir.1992) (addressing together the same preemption and savings clauses as *Myrick*).

The MDA preemption clause provides in pertinent part:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> > (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and
> >
> > (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a). The MDA also contains a savings clause, which provides in pertinent part that:

> Compliance with an order issued under [the MDA] shall not relieve any person from liability under Federal or State law.

21 U.S.C. § 360h(d).

Legal questions raised by Blanchard are whether there is an MDA requirement applicable to Zyplast and whether state common law claims are within the scope of the MDA's preemption clause. If so, Blanchard contends that her claims are exempted from preemption under FDA regulation 21 C.F.R. § 808.1(d). If Blanchard's claims are not exempted from preemption, the court must decide whether they are different from, or in addition to any applicable requirements under the MDA.

In deciding these issues, this court must follow the precedent established by the Fifth Circuit Court of Appeals.[4] The Fifth Circuit has addressed the scope of § 360k(a) in four opinions: *Feldt v. Mentor Corp.,* 61 F.3d 431, 434 (5th Cir.1995); *Reeves v. AcroMed Corp.,*

---

4. The ultimate outcome in this case is dictated by Fifth Circuit precedent. This court has attempted to analyze the issues raised by Blanchard which have not been previously addressed by the Fifth Circuit in a manner that is consistent with the precedent, even though sound argument exists for ruling differently.

44 F.3d 300, 304 (5th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *Stamps,* 984 F.2d at 1421; and *Moore v. Kimberly–Clark Corp.,* 867 F.2d 243, 246–47 (5th Cir.1989).[5] In these cases the Fifth Circuit determined that: 1) it is not necessary to address implied preemption because § 360k(a) is a reliable indicium of congressional intent;[6] and 2) the court may refer to FDA regulations in determining the scope of § 360k(a).[7]

### 1. MDA Requirement Applicable to the Device

The language of § 360k(a) provides that preemption occurs only when the FDA has issued regulations or other requirements applicable to a device. The FDA has interpreted this requisite to preemption in § 808.1(d):

> State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.

21 C.F.R. § 808.1(d) (in pertinent part).

Blanchard correctly points out that there are no MDA requirements specifically applicable to Zyplast, citing § 808.1(d). She argues, therefore, that her state law claims are not preempted by § 360k(a). Blanchard's argument must fail for two reasons.

■ First, the Fifth Circuit has clearly rejected the argument that an MDA requirement must be device-specific in order to preempt a state law claim. *Stamps,* 984 F.2d at 1424. "Although the requirements must be 'specific' and applicable to a 'particular' device, there is no language mandating that such requirements be specifically applicable to the device." *Feldt,* 61 F.3d at 435 n. 5.

■ Second, the Fifth Circuit has concluded that the pre-market approval process serves as a "specific requirement applicable to particular device" within the meaning of 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(d). *Stamps,* at 1422–24. *But see Kennedy v. Collagen Corp.,* 67 F.3d 1453 (9th Cir.), *as amended* Nov. 27, 1995 (finding that PMA does *not* qualify as a "specific requirement applicable to a particular device"); *Cf. Bravman v. Baxter Healthcare Corp.,* 842 F.Supp. 747 (S.D.N.Y.1994) (where "despite some reservation," the court followed the prevailing law that PMA constitutes a specific requirement applicable to a particular device.)

---

5. Of these, only *Stamps* involved claims against a Class III device with PMA approval.

6. The Fifth Circuit declined to conduct an implied preemption analysis based on the fact that § 360k(a) is an express preemption provision. The court in *Stamps* stated: "Applying *Cipollone,* we reject, at the outset, Collagen's contention that we may resort to the doctrine of implied preemption to uphold the district court. The existence in the MDA of an express preemption provision precludes any such reliance." *Stamps,* 984 F.2d at 1420. *See also Feldt,* 61 F.3d at 433; *Reeves,* 44 F.3d at 303.

Recently, the United States Supreme Court in *Freightliner Corp. v. Myrick,* — U.S. —, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), clarified its opinion in *Cipollone.* In *Freightliner,* the Court rejected the idea that an express preemption clause forecloses any possibility of implied preemption. *Id.* at —, 115 S.Ct. at 1487. After finding that the express preemption clause in that case did not preempt the plaintiff's claims, the court conducted an implied preemption analysis. Neither party in this case raised the issue of implied preemption.

7. This is an implicit finding that § 360k(a) is ambiguous. A court may not refer to an agency's regulations unless a statute is silent or ambiguous as to congressional intent. *Chevron U.S.A., Inc.,* 467 U.S. at 841–44, 104 S.Ct. at 2781–82. *Cf. Mitchell,* 67 F.3d at 1276 and *Lohr v. Medtronic, Inc.,* 56 F.3d 1335, 1344 (11th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3360 (U.S. Nov. 13, 1995) (No. 95–754) (finding § 360k(a) ambiguous.)

It apparently is not inconsistent to find that a statute provides a reliable indicium of congressional intent, but that the statutory language is ambiguous. *See Cipollone,* 505 U.S. 504, 112 S.Ct. 2608 (where the Justices debated the scope of an ambiguous preemption provision, but found that the provision provided a reliable indicium of congressional intent); *Myrick,* 13 F.3d at 1526–27 (rejecting the argument that ambiguity equates with unreliability); *Papas v. Upjohn Co.,* 985 F.2d 516, 517 (11th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993) (finding an ambiguous preemption provision to be a reliable indicium of congressional intent).

## 2. State "Requirement"

■ Although § 360k(a) is an express preemption provision, it does not expressly preempt state common law claims. When § 360k(a) and § 360h(d) are considered together, they are reliable indicia that Congress intended to preempt some, but not all, state action. *See Mitchell,* 67 F.3d at 1276; *Lohr,* 56 F.3d at 1342–43.

What kinds of state action Congress intended to preempt and to preserve is not clear. Subject to debate is whether the term state "requirement" includes state common laws, or only statutes and regulations, and the scope of the term "state laws."[8] The ambiguity of the preemption and savings clauses is apparent given the various analyses in over 100 opinions addressing preemption under the MDA. Although the majority of the courts addressing this issue have concluded that § 360k(a) applies to state common laws, as of October 17, 1995, there is a split in the circuits as to whether any state common law actions are preempted by the

MDA. *Compare Kennedy,* 67 F.3d 1453, *as amended* Nov. 27, 1995 (finding that the MDA does not preempt any state common law claims made against a Class III device that received PMA approval) with *Stamps,* 984 F.2d at 1421 (MDA preempts state tort claims if they would impose requirements different from or in addition to Zyplast's and Zyderm's PMA.)

The Fifth Circuit expressly determined that the term "requirement" as used in § 360k(a) includes state common law claims. *See Feldt,* 61 F.3d at 434; *Reeves,* 44 F.3d at 304; *Stamps,* 984 F.2d at 1421; *Moore,* 867 F.2d at 246–47. *See also King,* 983 F.2d at 1134; *Worthy v. Collagen Corp.,* No. 05–94–01574–CV, 1995 WL 654413, at *5, ——— S.W.2d ———, ——— (Tex.App. Oct. 31, 1995); *Mears v. Marshall,* 137 Or.App. 390, 905 P.2d 1154, 1162–63 (1995); *Tucker v. Collagen Corp.,* No. 93 C 2375, 1994 WL 87367, at *3, (N.D.Ill. Mar. 16, 1994).[9]

■ Thus, under the law of the Fifth Circuit, a state common law claim is

---

8. For example, regardless of whether the preemption of state "requirements" under § 360k(a) is construed to mean preemption of statutes and regulations only, or to include state common law as well, the preservation of "liability under … State law" in § 360h(d) of the savings clause must be interpreted to mean that it saves from preemption something less than all state laws in order to be consistent with the preemption clause. If these two clauses are considered together, as they must be, it is impossible to give the savings clause term "state laws" its plain, broad meaning.

9. The majority of courts which have addressed the meaning of the term state "requirement," including the Fifth Circuit, have found that it extends to state common law claims, relying in large part on the FDA's regulation found at 21 C.F.R. § 808.1(b). Section 808.1(b) defines the term "requirement" as used in § 360k as any standard "having the force and effect of law whether established by statute, ordinance, regulation or *court decision." See* 21 C.F.R. § 808.1(b) (Emphasis added.) For additional support, courts frequently refer to the Supreme Court opinion in *Cipollone* where the Court, addressing preemption provisions in federal cigarette acts, held that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Cipollone,* 505 U.S. at 521–22, 112 S.Ct. at 2620. It should be noted however, that the preemption provision in *Cipol-*

lone did not include a savings clause. In deciding that state common law claims are included in the scope of § 360k(a), the Fifth Circuit as well as most other courts, fail to address the effect of the savings clause. In addition, the Fifth Circuit has never addressed the effect of the FDA regulation at § 808.1(d)(1) which exempts from preemption "state requirements of general applicability."

If the term state "requirement" is interpreted to mean state statutes and regulations only, the savings clause clearly would preserve all state common law claims from preemption, and the explicit terms of these statutes would *expressly not* preempt state common law claims. Indeed, this was the result in two recent cases finding that § 360k(a) does not preempt any state law claims. After extensive analysis of the FDA's regulations and other evidence of Congressional intent, the Ninth Circuit Court of Appeals and an Illinois appellate court, found that the term "requirement" does not include state common law and therefore the plaintiff's state law claims were not expressly preempted. *See Kennedy,* 67 F.3d 1453, *as amended by,* 1995 WL 694923, ——— F.3d ———; *Haudrich v. Howmedica, Inc.,* 267 Ill. App.3d 630, 204 Ill.Dec. 744, 642 N.E.2d 206 (1994). *See also Bravman v. Baxter Healthcare Corp.,* 842 F.Supp. 747, 754–61 (S.D.N.Y.1994) (expressing reservations that a state requirement includes court decisions, and also discussing policy reasons against blanket federal preemption by the MDA, but ultimately finding preemption based on PMA).

preempted if imposition of liability pursuant to that claim:

(1) constitutes a requirement different from, or in addition to, any requirement the MDA makes applicable to the device at issue, and (2) relates either to (a) the safety or effectiveness of the device or (b) any other matter included in a requirement made applicable to the device by the MDA.

*Stamps,* 984 F.2d at 1421. Clearly, Blanchard's tort claims relate to the "safety or effectiveness of the device." Blanchard argues that § 360k(a) does not preempt her claims because § 808.1(d) of the FDA regulations exempts certain types of state requirements, including those of general applicability, those that are equal to MDA requirements, and those that prohibit the manufacture of adulterated devices.

As quoted above, § 808.1(d) provides that state requirements are preempted when there are specific counterpart regulations or other specific requirements applicable to a particular device. The section then goes on to list several types of state requirements that are not preempted:

There are other State or local requirements that affect devices that are not preempted by [§ 360k(a)] because they are not "requirements applicable to a device" within the meaning of [§ 360k(a)]. The following are examples of State or local requirements that are not regarded as preempted by [§ 360k(a)]:

(1) Section [360k(a)] does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.

(2) Section [360k(a)] does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act.

.    .    .    .    .

(6)(ii) Generally, section [360k(a)] does not preempt a State or local requirement prohibiting the manufacture of adulterated or misbranded devices. Where, however, such a prohibition has the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement, then the prohibition will be preempted if the requirement is different from, or in addition to, a Federal requirement established under the act.

21 C.F.R. § 808.1(d)(1)–(2), and (6)(ii).

Considering that the law of the Fifth Circuit includes state common law claims within the scope of § 360k(a), the court is unable to view the FDA exemption for state requirements of "general applicability" as an exemption for all state tort and products liability laws. Reading § 808.1(d) and the preemption provisions as a whole, in light of the Fifth Circuit precedent, it appears that a state may not impose a requirement, even one of general applicability such as a common law product liability claim, if it would alter the MDA requirements. Any state law claim that would require a court finding that the standard imposed by the FDA was insufficient would impose a requirement "different from or in addition to" that imposed by the FDA. On the other hand, a state may impose laws of general applicability if it would impose a requirement identical to an MDA requirement or would not have any substantive effect on the MDA requirements applicable to the device.[10] *See Worthy,* 1995 WL

---

10. Arguably, the Fifth Circuit has used language in *Stamps* suggesting that all state tort claims relating to safety or effectiveness ipso facto constitute requirements different from or in addition to the PMA process. In *Stamps,* the Fifth Circuit held that "[s]tate tort causes of action—to the extent they relate to safety, effectiveness, or other MDA requirements—constitute requirements 'different from, or in addition to' the Class III process; they are, therefore, preempted." 984 F.2d at 1424. The effect of this language is to create a blanket preemption of all state tort claims relating to safety or effectiveness. Such a blanket preemption is inconsistent with the presumptions against preemption and the narrow reading courts must give to preemption statutes that would leave the plaintiffs without a remedy for personal injuries. It is also inconsistent with the United States Supreme Court opinion in *Cipollone* where the Court stated that each common law claim must be examined in light of the specific language of the preemption provision to

654413, at * 8–10 (concurring opinion Devany, J.)

### 3. "Different From, Or In Addition To"

#### a. Claims for strict liability and negligence for failure to warn, improper design, construction, manufacture, and testing

■ Under the law of the Fifth Circuit, § 360k(a) preempts these claims because they would impose requirements different from or in addition to those required by the Class III PMA process. *See Stamps,* 984 F.2d at 1422 (preempting claims for inadequate labeling, failure to warn, defective design and manufacture against manufacturer of Zyplast, a Class III device with PMA); *Feldt,* 61 F.3d at 436 (preempting claims of negligence and strict liability for inadequate warnings and labeling against a Class III device without PMA but subject to abbreviated pre-market notification process); *Reeves,* 44 F.3d at 304 (preempting claims for failure to warn against manufacturer of a Class II device where device's labels were approved through the less stringent pre-market notification process); *Moore,* 867 F.2d at 246–47 (preempting claims for inadequate labeling and warning regarding toxic shock syndrome against manufacturer of tampons, a Class II device, where FDA regulations specifically prescribed the form and content of toxic shock warnings on tampons). *See also Mitchell,* 67 F.3d 1268 at 1280–81 (preempting claims of strict liability and negligence for inadequate warnings, design, testing, approval, manufacturing, marketing, and sale of Zyderm [11]); *King,* 983 F.2d at 1135–36 (preempting claims of strict product liability for failure to warn and manufacturing or design defects, and negligence in design, manufacture, marketing, and sale against manufacturer of Zyderm); *Worthy,* 1995 WL 654413, at * 10, —— S.W.2d at —— (preempting claims under the Texas Deceptive Trade Practices Act for false advertising, labeling, failure to warn, manufacture, and marketing

against manufacturer of Zyderm); *Mears v. Marshall,* 905 P.2d at 1164–66 (preempting claims of strict liability for design defect and failure to warn and negligence in developing, researching, designing, testing, and marketing of Zyderm); *Tucker v. Collagen Corp.,* 1994 WL 87367, at * 5 (preempting claims for failure to warn and design and manufacturing defects against manufacturer of Zyderm).

The court's reasoning in these cases is based on the fact that the PMA process conditions approval of a device for marketing on the FDA's determination that the manufacturer's proposed labeling and warnings, design, construction, and manufacture provide reasonable assurance of the device's safety and effectiveness. Any liability on these claims would negate the FDA's determination and impose different or additional requirements on the manufacturer in violation of the MDA. *See e.g., Reeves,* 44 F.3d at 305 (citing *Stamps,* 984 F.2d at 1423) ("The FDA implicitly approves a manufacturer's proposed labeling when the agency approves a device for marketing."); *King,* 983 F.2d at 1135–36 (a finding of liability on claims for strict liability and negligence in design, manufacture, marketing, sale, and labeling and warning would require the manufacturer to alter these aspects of Zyderm, remove it from the market, or subject itself to liability.)

Accordingly, Blanchard's claims that Collagen is strictly liable or negligent for failure to warn and improper design, construction, manufacture, and testing of Zyplast is preempted to the extent that these claims would impose requirements different from, or in addition to those imposed by the MDA.

#### b. Claims of strict liability and negligence for contamination

■ Blanchard has asserted that the product with which Blanchard was injected was contaminated as a result of Collagen's failure to comply with FDA requirements. Blanchard has produced evidence creating a

---

determine whether it is in fact preempted. *See Cipollone* 505 U.S. at 522–24, 112 S.Ct. at 2621. In addition, the Fifth Circuit's post-*Stamps* decision in *Feldt,* implicitly rejected this language when it held that "there must be some nexus between the state and federal requirements to

trigger section 360k preemption." *Feldt,* 61 F.3d at 435.

**11.** Zyderm is a collagen based product similar to Zyplast that is injected or implanted to correct skin tissue.

genuine issue of material fact as to whether the collagen was in fact contaminated.

This type of claim is specifically exempted from preemption by FDA regulation 808.1(d)(6)(ii). That section (quoted above) provides that claims of "adulteration" are not preempted unless the state requirement has the effect of establishing a substantive requirement for a specific device which is different from, or in addition to any MDA requirement.

If Collagen is found liable on this claim, it will not be required to take any action that is not already approved by the FDA. Blanchard's claim will have the effect of enforcing the MDA standards. State requirements that are equal to, or substantially identical to, requirements imposed by the MDA are not preempted. *See* 21 C.F.R. § 808.1(d)(2). *See also Mitchell,* 67 F.3d at 1281–82 (the plaintiff's claim that Zyderm was adulterated because Collagen failed to meet the labeling and purity standards established by the PMA process is not preempted because "[s]uch a claim seeks merely to enforce the federal standard, not to add requirements 'different from, or in addition to' it"; *King,* 983 F.2d at 1135 (citing *Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1334 (7th Cir.), *cert. denied,* 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992) ("the MDA does not preempt such claims as negligent implantation or removal of devices, or claims arising out of contaminated devices"); *Reiter v. Zimmer, Inc.,* 830 F.Supp. 199, 204 (S.D.N.Y. 1993) (plaintiff's claim of negligent manufacture was not preempted where it was based on the defendant not complying with the FDA approved manufacturing process.)

In conclusion, the court finds as a matter of law that, with the exception of the contamination claim, all of Blanchard's state law claims would impose different or additional requirements from those imposed by the MDA and are therefore, preempted.

Accordingly,

IT IS ORDERED that defendant Collagen Corporations' Motion for Summary Judgment on the issue of federal preemption is **GRANTED IN PART** and **DENIED IN PART** dismissing all of plaintiff's claims as

preempted except for strict liability and negligence based on contamination of the product.