930 P.2d 477

**Arlene FIORE and Richard Fiore, Plaintiffs–Appellants,**

v.

**COLLAGEN CORPORATION, a Delaware corporation, Defendant–Appellee.**

No. 1 CA–CV 94–0375.

Court of Appeals of Arizona, Division 1, Department A.

June 25, 1996.

Review Denied Jan. 14, 1997.

Essmyer & Tritico, L.L.P. by Michael M. Essmyer, Houston, Texas, and Law Office of Clinard J. Hanby by Clinard J. Hanby, The Woodlands, Texas, and Begam, Lewis, Marks & Wolfe by Cora Perez, Phoenix, for Plaintiffs–Appellants.

Beck, Redden & Secrest, L.L.P. by Joe W. Redden, Jr., Curt Webb, Houston, Texas, and Teilborg, Sanders & Parks, P.C. by John C. Gemmill, Phoenix, and Sedgwick, Detert, Moran & Arnold by Frederick D. Baker, San Franciso, CA, for Defendant–Appellee.

## OPINION

TOCI, Judge.

Plaintiffs Arlene and Richard Fiore ("Fiore") appeal from the summary judgment granted to Collagen Corporation ("Collagen Corporation") in Fiore's products liability action. Fiore sued Collagen Corporation for Arlene's injuries after she received injections of Zyderm Collagen Implant ("Zyderm"), an anti-wrinkle substance manufactured and sold by Collagen Corporation.

The trial court found that a section of the Medical Device Amendments of 1976 ("MDA") preempted Fiore's claims for negligence, strict liability in tort, breach of express and implied warranty, and fraud. It also denied leave to file an amended complaint alleging a violation of the Arizona Consumer Fraud Act after the court had granted summary judgment on the original complaint. We conclude that the MDA does not preempt state common law tort claims and thus reverse the judgment and remand for further proceedings consistent with this opinion. Therefore, we need not resolve whether the trial court erred in denying the motion to file an amended complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Collagen Corporation manufactures and distributes products made from a purified form of bovine collagen. One of these products, Zyderm, is injected under the skin to correct or improve soft tissue deficiencies due to disease, trauma, or age. Zyderm is considered a Class III medical device.

Prior to 1976, the United States Food and Drug Administration ("FDA") lacked authority to examine the safety and effectiveness of any medical device before the maker sold the device to the public unless the FDA could convince a court that the device was a drug. Robert S. Adler & Richard A. Mann, *Preemption and Medical Devices: The Courts Run Amok*, 59 Mo. L.Rev. 895, 910–11 (1994) ("Adler & Mann"). As a consequence of the Dalkon Shield litigation, Congress amended the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–93 (1972), to extend the FDA's jurisdiction to medical devices. Adler

& Mann, *supra*, at 911–12 n. 84; *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1319 (3d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995). These amendments, codified at 21 U.S.C. §§ 360c through 360l (Supp. 1995), are referred to as the Medical Device Amendments of 1976 or "MDA."

Pursuant to these statutes, the FDA classifies all medical devices. The categories and the corresponding legal consequences of each can be briefly described as follows.

Class I devices, such as tongue depressors, are devices which generally pose little or no threat to public health and are subject only to general controls on manufacturing. *See* 21 U.S.C. § 360c(a)(1)(A). Class II devices, such as oxygen masks, pose a slightly greater risk of injury to patients, and accordingly, the MDA subjects them to performance standards, post market surveillance, guidelines for use and other appropriate controls. *See id.* § 360c(a)(1)(B). Class III devices ... include all devices which are to be implanted into people, which are used to sustain life, or which pose a potentially unreasonable risk of injury. *See id.* § 360c(a)(1)(C).

*Michael*, 46 F.3d at 1319–20.

Under the MDA, no company may market or sell a Class III device until it obtains premarket approval from the FDA. 21 U.S.C. § 360e. The sponsoring company must submit "all information, published or known to or which should reasonably be known to the applicant, concerning investigations which have been made to show whether or not such device is safe and effective," 21 U.S.C. § 360e(c)(1)(A), a description of the product's ingredients, method of manufacture, and performance standards, as well as any other information requested by the FDA, 21 U.S.C. § 360e(c)(1)(B)-(G). Following review by a panel of medical experts and a favorable recommendation, the FDA may approve the application.

Additionally, the FDA's regulations permit it to require warnings or instructions on the product's labels and to regulate the manufacturing processes. 21 C.F.R. § 814.82, 820.100–101. The FDA may require the product's sponsor to notify the public of a

newly-discovered danger, to replace the device, or to refund its purchase price. 21 U.S.C. § 360h. The FDA's continuing authority also requires manufacturers to report deaths or serious injuries from use of a Class III device. *See* 21 C.F.R. § 803.24(a)(1)(i). The Act does not, however, authorize the FDA to require companies to compensate victims for either medical expenses or pain and suffering caused by a device failure. *See Mears v. Marshall,* 137 Or.App. 390, 905 P.2d 1154, 1160 (1995) (no private right of action).

On April 30, 1980, Collagen Corporation filed a premarket approval application for Zyderm. A panel of experts reviewed the application and imposed a number of conditions on Collagen Corporation.[1] In July 1981, the FDA issued an order permitting Collagen Corporation to market Zyderm. In 1991 and 1992, the FDA reviewed the premarket approval application and concluded that its initial approval of the application was appropriate.

In 1986 or 1987, Arlene Fiore received Zyderm injections. She filed this products liability action against Collagen Corporation and her doctor in February 1993, alleging that Collagen Corporation knew or should have known that the human immune system views Zyderm as a foreign protein, and thus Zyderm provokes significant immune and autoimmune reactions. The complaint stated that after the injections, Arlene suffered serious physical and emotional injury and was diagnosed with an autoimmune disease and other related conditions. The complaint alleged claims against Collagen Corporation (1) for negligence in developing, testing, manufacturing, inspecting, labeling, marketing, promoting, advertising, selling and distributing Zyderm; (2) for strict liability; (3) for breach of express and implied warranties that Zyderm was safe, fit, and proper for cosmetic use; and (4) for negligent or fraudulent representations of Zyderm's safety and fitness to Fiore, her physicians, the FDA, and the general public.

Collagen Corporation successfully moved for summary judgment on the theory that 21 U.S.C. §§ 360c through 360ss and the FDA regulations preempted all of Fiore's claims.[2] Fiore then moved for leave to file an amended complaint alleging a claim against Collagen Corporation for violation of the Arizona Consumer Fraud Act, A.R.S. sections 44–1521 through –1534 (1994). The trial court denied the motion as untimely. We have appellate jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## II. DISCUSSION

### A. Standard of Review

■ We review *de novo* the trial court's interpretation of a statute. *Chaffin v. Commissioner of the Ariz. Dep't of Real Estate,* 164 Ariz. 474, 476, 793 P.2d 1141, 1143 (App. 1990). In reviewing the trial court's grant of summary judgment, we view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Hill v. Chubb Life Am. Ins. Co.,* 182 Ariz. 158, 160, 894 P.2d 701, 703 (1995).

### B. Federal Preemption Doctrine in the Context of Cigarette Regulation

■ The preemption doctrine derives from the Supremacy Clause of the Constitution,

---

1. The FDA required Collagen Corporation to obtain its approval of any change that might adversely affect Zyderm's safety or effectiveness; to submit copies of all labeling in final printed form; to conduct studies of treated patients; to promptly report adverse reactions or incidents of mislabeling or failure to meet the PMA specifications; and to submit all written promotional materials, annual reports, including reports of *in vitro,* animal, and clinical studies, and descriptions of any changes in Zyderm not previously submitted in a supplemental premarket approval application.

2. The trial court cited two recent federal cases finding preemption under the MDA and relevant regulations, *Stamps v. Collagen Corp.,* 984 F.2d 1416 (5th Cir.), *cert. denied,* 510 U.S. 824, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993) (defective design, inadequate warning, and negligent failure to warn), and *King v. Collagen Corp.,* 983 F.2d 1130 (1st Cir.), *cert. denied,* 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) (strict liability, breach of express and implied warranties, negligent design, manufacturing and sale, misbranding, and failure to warn claims preempted by the MDA). As a matter of comity, the court gave substantial weight to the two decisions and found no valid authority to hold that they were wrongly decided. Therefore, the court adopted the views of the Fifth and First Circuits and found Fiore's claims preempted by federal law.

which states: "This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, Cl. 2. Thus, federal laws or regulations supersede conflicting state laws. *See Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

Numerous federal circuit and district courts have relied upon the preemption doctrine to eliminate or restrict state common law causes of action against manufacturers of medical devices. Many of these decisions adopted the reasoning of the United States Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). *Cipollone* held that federal statutes regulating cigarette advertising and labeling evidenced a congressional intent to preempt at least some state tort claims. *Id.* at 517–19, 112 S.Ct. at 2618. The Court thus found precluded some causes of action based on Cipollone's death from lung cancer. *Id.* at 522–24, 112 S.Ct. at 2621.

 Federal law does not supersede state regulation, however, "unless that [is] the clear and manifest purpose of Congress." *Id.* at 516, 112 S.Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Further, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.* at 517, 112 S.Ct. at 2618.[3]

In *Cipollone*, the Court "narrowly" construed the language of the 1965 Act regulating cigarette labeling and advertising "in light of the presumption against the preemption of state police power regulation." *Id.* The 1965 Act expressly provided for preemption and stated in part, "No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package." It also provided, "No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labelled in conformity with ... this Act." § 5(a), (b). The Court noted that the federally required warning on cigarettes did not automatically "foreclose additional [state-imposed] obligations," and it found no "inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common law damages actions." *Id.* Thus, the statute superseded only positive state enactments "that mandate particular warning labels ... but not common law damages actions." *Id.* at 518–19, 112 S.Ct. at 2618–19.

The Court reached a different conclusion in analyzing the 1969 Public Health Cigarette Smoking Act. The statute's express preemption provision read: "(b) No *requirement or prohibition* based on smoking and health *shall be imposed under State law* with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." *Id.* at 515, 112 S.Ct. at 2617 (emphasis added). This more sweeping language extended beyond the word "statements" used in the 1965 Act to bar state-imposed "requirement[s] or prohibition[s]." *Id.* at 520, 112 S.Ct. at 2619. The Court found the latter terms to include not only state statutes or "positive enactments" but also common law damages actions premised on payment of compensation for breach of a legal duty. *Id.* at 521–22, 112 S.Ct. at 2620.

The Court then analyzed each common law claim to determine if it constituted a "requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion...." *Id.* at 524, 112 S.Ct. at 2621. It found preemption of claims for failure to warn but not of claims for express warranty, intentional fraud and misrepresentation, or conspiracy to misrepresent or conceal. *Id.* at 522–32, 112 S.Ct. at 2621–25.

---

**3.** The Court later stated that while *Cipollone* did not establish a rule that an express preemption clause entirely forecloses implied preemption, an express clause nevertheless implies such an ef-fect. *Freightliner Corp. v. Myrick*, 514 U.S. 280, ———–———, 115 S.Ct. 1483, 1487–88, 131 L.Ed.2d 385 (1995).

## C. Preemption Under the MDA

■ As with the cigarette legislation, the MDA contains an express preemption provision. It states:

Except as provided in subsection (b) ..., no State ... may establish or continue in effect with respect to a device intended for human use any *requirement*—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device....

21 U.S.C. § 360k(a) (emphasis added).

A majority of post-*Cipollone* decisions interpreting § 360k(a) concludes that Congress intended "requirement" to include state common law tort claims of general application and thus find full or partial preemption of such claims against manufacturers of medical devices.[4] *Mitchell v. Collagen Corp.*, 67 F.3d 1268 (7th Cir.1995), exemplifies this view.

In *Mitchell*, the Seventh Circuit Court of Appeals relied upon *Cipollone*'s holding that the 1969 Act's phrase, "No requirement or prohibition ... shall be imposed under State law," included state common law rules. 67 F.3d at 1275–76. Therefore, the Seventh Circuit concluded that § 360k(a)'s preemption of state requirements "different from, or in addition to," those of the MDA included state common law causes of action. The

---

4. *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25 (1st Cir. 1995) (all state law product liability and breach of warranty claims preempted); *Mendes v. Medtronic, Inc.*, 18 F.3d 13 (1st Cir.1994) (negligence and breach of warranty claims based on failure to warn and manufacturing defect preempted); *King v. Collagen Corp.*, 983 F.2d 1130 (strict liability, implied warranty of merchantability, negligent design, manufacture, marketing and sale, misbranding or mislabeling, failure to warn, and express warranty claims preempted); *English v. Mentor Corp.*, 67 F.3d 477 (3d Cir.1995) (all state law claims preempted except express warranty); *Gile v. Optical Radiation Corp.*, 22 F.3d 540 (3d Cir.), *cert. denied*, 513 U.S. 965, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994) (product liability and negligence claims preempted); *Duvall v. Bristol–Myers–Squibb Co.*, 65 F.3d 392 (4th Cir.1995) (all state claims preempted other than express warranty claim unrelated to FDA-approved labeling and warnings); *Feldt v. Mentor Corp.*, 61 F.3d 431 (5th Cir.1995) (failure to warn claims preempted; design defect claims on non-PMA Class III device not preempted); *Reeves v. AcroMed Corp.*, 44 F.3d 300 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995) (failure to warn claim preempted; strict liability claim based on off-label use of Class III medical device not preempted); *Stamps v. Collagen Corp.*, 984 F.2d 1416 (defective design, inadequate warning and negligent failure to warn claims preempted); *Martin v. Telectronics Pacing Systems, Inc.*, 70 F.3d 39 (6th Cir.1995) (all state law product liability and breach of warranty claims preempted); *Mitchell v. Collagen Corp.*, 67 F.3d 1268 (7th Cir.1995) (fraud on FDA, strict liability, negligence, mislabeling, packaging and labeling fraud, implied warranty claims preempted; fraud in advertising and promotion materials and express warranty claims not preempted); *Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th Cir.), *cert. denied*, 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992) (all product liability claims preempted; limited to efforts by states to impose sanctions for feder-al regulations relating to safety of experimental lenses); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995) (strict liability; breach of express and implied warranty; and negligent design, inspection, instructions, labeling, warning, and testing claims preempted); *National Bank of Commerce of El Dorado v. Kimberly–Clark Corp.*, 38 F.3d 988 (8th Cir.1994) (negligent labeling claim preempted because approved by FDA; negligent testing, design, and manufacture claims on Class II device not preempted); *Lohr v. Medtronic, Inc.*, 56 F.3d 1335 (11th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 806, 133 L.Ed.2d 752 (1996) (negligent manufacture and negligent failure to warn claims preempted; negligent design and strict liability claims not preempted on non-PMA Class III device); *Duncan v. Iolab Corp.*, 12 F.3d 194 (11th Cir.1994) (negligence, strict liability and breach of implied warranty claims preempted); *Blanchard v. Collagen Corp.*, 909 F.Supp. 427 (E.D.La.1995) (strict liability and negligence in failure to warn, design and manufacture preempted; strict liability and negligence based on contamination not preempted where manufacture not in accordance with FDA standards); *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App.4th 779, 34 Cal.Rptr.2d 852 (1994) (negligence and strict liability claims preempted; express warranty, fraud, and negligence per se claims not preempted); *Mears v. Marshall*, 137 Or.App. 390, 905 P.2d 1154 (strict liability, implied warranty, express warranty based on brochures and packaging approved by FDA, and negligence claims preempted); *Rosci v. AcroMed, Inc.*, 447 Pa.Super. 403, 669 A.2d 959 (1995) (implied warranty claims preempted; express warranty claims not preempted); *Green v. Dolsky*, 433 Pa.Super. 556, 641 A.2d 600 (1994) (mislabeling, misbranding, adulteration, fraud, misrepresentation and breach of warranty claims preempted). *Contra Kennedy v. Collagen Corp.*, 67 F.3d 1453 (9th Cir.1995).

court cited an FDA regulation interpreting the statute to preempt state requirements established by "statute, ordinance, regulation, or court decision," 21 C.F.R. § 808.1(b), as further evidence of preemption of state common law claims. 67 F.3d at 1275–76.

The Ninth Circuit Court of Appeals in November 1995 rejected this view in *Kennedy v. Collagen Corp.*, 67 F.3d 1453 (9th Cir. 1995). The plaintiff, who had developed an autoimmune disorder after receiving Zyderm injections, and her husband asserted claims for negligence, strict liability, breach of warranty, battery, conspiracy, and loss of consortium. *Id.* at 1454. The district court granted summary judgment for Collagen Corporation on preemption grounds after finding that the premarket approval process constitutes a specific federal requirement that preempts state common law claims. *Id.* at 1458.

The Ninth Circuit reversed and held that generally applicable state common law, including tort law, is not preempted by § 360k(a). *Id.* at 1459–60. Under 21 U.S.C. § 360k(a)(1), a preempted state "requirement" is one that is either "in addition to" or "different from" an MDA requirement applicable to the device in question. Because Congress had not addressed the question of what constitutes a "State requirement" under § 360k(a), the court looked to the FDA's own interpretation expressed in its regulation, 21 C.F.R. section 808.1(d). 67 F.3d at 1457–58.

Section 808.1(d) provides that state requirements are preempted *"only* when the Food and Drug Administration has established *specific* counterpart regulations or ... other *specific* requirements appl[y] to a *particular device* under ... the act, thereby making any existing divergent State ... requirements applicable to the device different from or in addition to, the *specific* Food and Drug Administration requirements." (Emphasis added.) The Ninth Circuit noted that the courts have not often found common law tort actions involving Class II devices preempted and questioned the failure to comparably construe the words "particular device" when dealing with Class III devices. 67 F.3d at 1458. Further, the fact that the premarket approval process entailed compli-

ance with a number of mandatory procedures specific to the device in question did not necessarily mean that the premarket approval process itself was a "specific requirement applicable to a particular device under the act" within 21 C.F.R. § 808.1(d). 67 F.3d at 1459.

The court also noted that 21 U.S.C. § 360k(a) "does not preempt State ... requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices ... or to unfair trade practices...." *Id.* at 1457–58 (quoting 21 C.F.R. § 808.1(d)); *see, e.g.,* § 808.1(d)(1) and (6)(ii). Because "state common law does not relate solely to or regulate any *particular* device or product to the exclusion of other devices or products," it is not preempted. 67 F.3d at 1459. Furthermore, although the court acknowledged, as the Supreme Court had in *Cipollone,* that the common law may have an indirect regulatory effect on manufacturers, it found the effect "insufficient to alter the fact that state common law is a law of general applicability and therefore cannot qualify as a *specific* requirement which may be preempted by the MDA." *Id.*

Finally, the court could not accept the consequence of a finding of preemption. "[I]t is incredible to believe that Congress would, without comment, void all means of relief for those injured by illegal conduct." *Id.* (citing *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251, 104 S.Ct. 615, 622–23, 78 L.Ed.2d 443 (1984)). To read the MDA preemption to preclude any and all remedies in state or federal court "flies in the face of the congressional intent behind the MDA legislation: consumer protection." *Id.; see also* Adler & Mann, *supra,* at 922–23 n. 126 (the MDA legislative history reveals "critical, and endlessly repeated focus" on protecting consumers from dangerous devices).

Judge Reinhardt's concurring opinion in *Kennedy* further explained the meaning of "State requirement." He noted that decisions such as *Gile v. Optical Radiation Corp.,* 22 F.3d 540 (3d Cir.), *cert. denied,* 513 U.S. 965, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994), relied upon the FDA's reference to

"court decisions" in 21 C.F.R. § 808.1(b) [5] to find preemption of state tort claims. Judge Reinhardt concluded, however, that despite the reference to court decisions in section 808.1(b), "Section 808.1(d)(1) specifically provides that 'requirements' involving laws of general applicability, are not preempted. Since under § 808.1(b), 'requirements' includes 'court decisions,' 'court decisions' must be read as not including decisions involving rules of general applicability." 67 F.3d at 1461–62. Thus the reference to "court decision" in section 808.1(b) could not modify section 808.1(d), which limits "requirements" to provisions applicable expressly to medical devices. *Id.*

We adopt *Kennedy* as the better reasoned view of preemption, despite its distinct minority status. In addition, "We customarily find Ninth Circuit authority persuasive on a federal question." *State v. Burkett,* 179 Ariz. 109, 112, 876 P.2d 1144, 1147 (App.1993), *cert. denied,* 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995). The *Kennedy* approach provides the additional advantage that identical rules apply in Arizona's state and federal courts. *See State v. Maese,* 27 Ariz.App. 379, 381, 555 P.2d 348, 350 (1976) (Ninth Circuit rule controls; defendant would receive same result in federal court review of sentence).

We cannot accept the suggestion that without serious study or debate on this question Congress would eliminate common law remedies available to persons injured by medical devices.

> If a primary purpose of MDA were safety, it would be strange for Congress to eliminate the safety aspects inherent in tort litigation by destroying tort litigation … with the same statute it passed to promote safety. It would be stranger still … to take such a dramatic action without even mentioning it as a consequence of the passage of a bill that was debated for years. Yet the debate and Congressional record are barren of any indication that Congress intended to preempt court decisions by passing the 1976 Medical Device Amendments.

*Haudrich v. Howmedica, Inc.,* 267 Ill.App.3d 630, 204 Ill.Dec. 744, 749–50, 642 N.E.2d 206, 211–12 (1994) (citations omitted).[6]

The thoughtful analysis of Justice Chapman in *Haudrich* buttresses a narrow reading of 21 U.S.C. § 360k.[7] From a careful consideration of the entire statute, Justice Chapman found, for example, that Congress did not intend "State or political subdivision" to include state courts and thus that courts cannot be the source of "requirements" that

---

**5.** Section 808.1(b) provides:

Section 521(a) of the act [21 U.S.C. § 360k(a)] contains special provisions governing the regulation of devices by States and localities. That section prescribes a general rule that after May 28, 1976, no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (*whether established by statute, ordinance, regulation, or court decision*), which is different from, or in addition to, any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act. (Emphasis added).

**6.** The Illinois Supreme Court determined that the defendant in *Haudrich* had waived the preemption issue in the trial court, and therefore declined to reach it.

**7.** 21 U.S.C. § 360k states:

(a) General rule

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

(b) Exempt requirements

Upon application of a State or a political subdivision thereof, the Secretary may, by regulation …, exempt from subsection (a) …, under [prescribed] conditions …, a requirement of such State or political subdivision applicable to a device intended for human use if—

(1) the requirement is more stringent than a requirement under this chapter which would be applicable to the device if an exemption were not in effect under this subsection; or

(2) the requirement—

(A) is required by compelling local conditions, and

(B) compliance with the requirement would not cause the device to be in violation of any applicable requirement under this chapter.

are preempted. 204 Ill.Dec. at 748, 642 N.E.2d at 210. To interpret "State" to include state courts would plainly include political subdivisions of the state. Because § 360k expressly includes "political subdivision" as an entity distinct from the "State," however, the term "State" must be given its ordinary meaning in order to give independent meaning to the term "political subdivision." *Id.*

Justice Chapman inferred, from repeated use of the word "requirement" to designate legislative or regulatory actions of both Congress and the FDA and also to refer to actions of "States or political subdivisions," that "requirement" means legislative or regulatory acts rather than adjudicatory acts of the courts. See *id.* 204 Ill.Dec. at 748–749, 642 N.E.2d at 210–11; *see also* Adler & Mann, *supra*, at 927–28. Further, he found, from the reference to "establish or continue in effect a requirement," an intent to cover requirements imposed by statute or regulation as opposed to case law because the latter "is handed down, developed, or decreed." 204 Ill.Dec. at 748, 642 N.E.2d at 210. Similarly, he concluded from the provision permitting the Secretary to exempt a requirement of a State or political subdivision that the Secretary would not normally exempt a court decision. Thus, the exemption power likely exists over statutes, ordinances, or regulations. *Id.*

Also, in our opinion, the Committee Report on the MDA supports this inference. It expressed concern that differing requirements imposed by *jurisdictions* other than the Federal government would unduly burden interstate commerce. The new section 521 "contains special provisions ... governing regulation of devices by *States and localities.*" 204 Ill.Dec. at 748, 642 N.E.2d at 210 (emphasis added) (quoting D. O'Keefe & R. Spiegel, *An Analytical Legislative History of the Medical Device Amendments of 1976*, App. III, at 45 (1976)). The Report cited California's 1970 Sherman Food, Drug, and Cosmetic Law as an example of a "requirement" that should be exempted from preemption. *Id.* at 750, 642 N.E.2d at 212 (quoting O'Keefe & Spiegel, *supra*, App. III at 46). It did not mention any case law or

court decisions. 204 Ill.Dec. at 749, 642 N.E.2d at 211.

Justice Chapman additionally pointed out that the FDA's regulations contain numerous provisions wholly inconsistent with the notion that "requirement" includes state court decisions. 21 C.F.R. § 808.3(d) defines "political subdivision" as "any lawfully established local governmental unit" that has "the authority to establish or continue in effect any *requirement* . ..." (Emphasis added.) This definition suggests that courts are not within the class of entities that establish requirements and thus that their decisions are not preempted by § 360k. 204 Ill.Dec. at 749, 642 N.E.2d at 211.

Further, 21 C.F.R. section 808.20(c)(1) provides that a state or political subdivision's application for an FDA exemption from preemption must include:

> Identification and a current copy of any *statute, rule, regulation, or ordinance of the State or political subdivision considered by the State or political subdivision to be a requirement which is preempted, with a reference to the date of enactment, promulgation, or issuance in final form* . . .[and][i]f the *requirement* has been *subject to any judicial* or administrative *interpretations,* the State or political subdivision shall furnish copies of such judicial or administrative interpretations.

(Emphasis added.) Nothing in this regulation suggests court decisions are regarded as a source of requirements. 204 Ill.Dec. at 751, 642 N.E.2d at 213. A narrow interpretation of "requirements" tends to support Judge Reinhardt's interpretation of "court decisions" in 21 C.F.R. § 808.1(b) as comprehending "only ... those court decisions that adopt special rules applicable to medical devices." *Kennedy,* 67 F.3d at 1461 (Reinhardt, J., concurring).

In urging the courts to reconsider and to stop barring claims of persons injured by medical devices, Adler and Mann conclude: "[P]reemption of product liability claims ... is misplaced—at least without ... a precise plan for offsetting approaches to protect consumers. Innovation without protection hardly improves the lives of our citizens and, ... the FDA by itself simply cannot provide an

adequate source of safety to the public from dangerous medical devices." Adler & Mann, *supra*, at 945.

In *Kennedy,* the Ninth Circuit has taken a well-grounded step to assure injured persons an avenue of redress for injures resulting from medical devices, and we join it. We reverse the judgment below and remand this matter for further proceedings consistent with this opinion.

CONTRERAS, P.J., and WEISBERG, J., concur.